OPINION
{¶ 1} Tyler Marie Glassco, appellant, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of the Ohio Department of Job and Family Services ("ODJFS"), appellee, which denied appellant's application for post-finalization adoption assistance ("AA") benefits.
 {¶ 2} Appellant was born on August 29, 1990, and was permanently surrendered by her birthmother for adoption. Appellant's adoption was finalized on March 21, 1991. Various emotional and behavioral issues became apparent as appellant grew older. In 1996, appellant was diagnosed with attention deficit hyperactivity disorder ("ADHD"). On March 20, 2000, appellant (through her adoptive mother as representative) applied for AA. After several hearings, decisions, and appeals, a settlement agreement was executed on February 19, 2002, waiving the issue of whether appellant obtained a best interest statement, and it was agreed that a state hearing would be held to determine whether appellant was a "special needs" child with regard to her AA application.
 {¶ 3} A state hearing was held on May 1, 2002, and, on June 24, 2002, a state hearing decision was issued overruling appellant's state hearing appeal because appellant's ADHD did not meet the definition of "special needs" as defined by Franklin County Children Services ("FCCS") or Ohio Adm. Code5101:2-47-35(B)(1)(b), and appellant did not meet the requirements of Ohio Adm. Code 5101:2-47-39(F). On September 25, 2002, appellant requested an administrative appeal of the state hearing decision. On October 7, 2002, an administrative appeal decision was issued affirming the state hearing decision and finding appellant did not meet the definition of "special needs" as defined by FCCS and was not encompassed by the provisions in Ohio Adm. Code 5101:2-47-39(F). On November 5, 2002, appellant filed an appeal of the administrative appeal decision in the Franklin County Court of Common Pleas. On August 12, 2003, the court affirmed the administrative appeal decision denying application for post-finalization AA benefits, relying upon Ohio Adm. Code 5101:2-47-35(B)(1)(b) and FCCS's definition of "special needs." Appellant now appeals the decision of the trial court, asserting the following three assignments of error:
I. The Common Pleas Court erred in affirming and imposing an impossible standard of proof on Tyler Glassco's application for adoption assistance. The court, ignored the preponderance of evidence standard for Administrative hearing decisions as provided in Ohio Administrative Code (OAC) Rule5101:6-7-01(C)(1)(c), and denied Tyler Glassco's eligibility on the grounds that the appellants failed to show to a reasonable certainty that the Tyler Glassco's ADHD condition was caused by factors that preceded the adoption.
II. The Common Pleas Court erred in applying Franklin County Children Services' definition of special needs which included long term counseling or counseling at developmental milestones for children with moderate emotional or behavioral disorders. These requirements are inconsistent with state and federal law and policy.
III. The Common Pleas Court incorrectly applies the OAC regulations for obtaining adoption assistance after finalization. The common pleas court refers to the pre-finalization standard that the assistance is necessary for adoption to proceed.
 {¶ 4} Appellant argues in her assignments of error that the trial court erred in affirming the state hearing decision and administrative appeal decision. R.C. 5101.35(A)(2) and (E) provide that an applicant, participant, or recipient of assistance from a family services program who disagrees with an administrative decision of the Director of Job and Family Services may appeal that decision to the court of common pleas, pursuant to R.C. 119.12. Haghighi v. Moody,152 Ohio App.3d 600, 2003-Ohio-2203. In an administrative appeal, pursuant to R.C. 119.12, a court of common pleas must determine whether the agency's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Our Place,Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570. The court must give due deference to the agency's resolution of evidentiary conflicts and may not substitute its judgment for that of the agency on factual issues. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108.
 {¶ 5} On factual issues, an appellate court's review is limited to determining whether the common pleas court abused its discretion in finding that the agency's decision was supported by reliable, probative, and substantial evidence. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619. On questions of law, however, the court's review is de novo. Univ. Hosp., Univ. ofCincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339.
 {¶ 6} The Title IV-E Adoption Assistance Program was promulgated by the federal government and is set forth in Section 670 et seq., Title 42, U.S.Code. The goal of the program is to provide financial support for children who are adopted and have special needs. Weaver v. Ohio Dept. of Job Family Serv.,153 Ohio App.3d 331, 2003-Ohio-3827, at ¶ 4. This program is administered by the states subject to certain federal requirements. See id, citing Section 671, Title 42, U.S.Code. Ohio has implemented this program through R.C. 5101.141 and Ohio Adm. Code 5101:2-47. Id., at ¶ 5.
 {¶ 7} The initial issue, as recognized by appellant's counsel, was whether appellant could receive future AA pursuant to her post-finalization application. Post-finalization applications are permitted under Ohio Adm. Code 5101:2-47-35, entitled "Adoption assistance eligibility procedure: post-finalization application." However, in both the state hearing decision and the administrative appeal decision, appellant was denied post-finalization future AA based upon the Ohio Administrative Code section addressing retroactive AA, Ohio Adm. Code 5101:2-47-39, which is entitled "Adoption assistance payment eligibility: payment for retroactive adoption assistance." Illustrative that confusion existed as to which administrative code section was applicable is the observation that, while both the state hearing decision and the administrative appeal decision expressly relied upon Ohio Adm. Code 5101:2-47-39 to analyze appellant's application, the trial court's decision does not even mention that section, yet it purports to follow the same analysis as the administrative decisions. Likewise, ODJFS fails to cite Ohio Adm. Code5101:2-47-39 in making any of its arguments, but it still urges affirmance of the administrative decisions. Appellant's counsel acknowledges this confusion in her trial court brief and parts of her appellate brief.
 {¶ 8} The code makes clear that post-finalization AA for future benefits under Ohio Adm. Code 5101:2-47-35 is different than and separate from retroactive AA under Ohio Adm. Code5101:2-47-39. Ohio Adm. Code 5101:2-47-35(B), effective May 1, 1998, provides that the public children services agency ("PCSA") must consider eligibility for AA after finalization and negotiate a "1453" "Adoption Assistance Agreement" with the adoptive parents if certain requirements are met. Ohio Adm. Code5101:2-47-35(C) provides that, if all of the conditions set forth in paragraph (B) are met, the effective date for AA is the date on which the 1453 agreement is signed by the PCSA and the adoptive parents. Thus, it is apparent that, pursuant to Ohio Adm. Code 5101:2-47-35, after certain requirements are met, adoptive parents are eligible for only future AA payment, effective prospectively from the date the 1453 agreement is signed.
 {¶ 9} However, it is clear from the provisions in Ohio Adm. Code 5101:2-47-39 that retroactive AA payment is separate from future AA payment and can only be determined after the child is first determined eligible for future AA payment under Ohio Adm. Code 5101:2-47-35. Ohio Adm. Code 5101:2-47-39(A) provides that a retroactive AA payment must be approved by ODJFS when a child is determined eligible for AA in accordance with Ohio Adm. Code 5101:2-47-35 and a 1453 agreement for future AA is completed. Likewise, Ohio Adm. Code 5101:2-47-39(H) states that "[u] pon determining the eligibility of the child for futureAA payments, in accordance with rule 5101:2-47-35 * * * and negotiating a completed agreement for future AA in accordance with * * * 5101:2-47," the PCSA must notify the adoptive parents that retroactive AA payments have been approved for the child. (Emphasis added.) Further, because retroactive AA payment is calculated backwards from the date on which future post-finalization AA payment commences under Ohio Adm. Code5101:2-47-35, it would be impossible to determine the effective dates for retroactive AA payment without first determining what date future AA payment commenced. See Ohio Adm. Code5101:2-47-39(C). More obviously, Ohio Adm. Code 5101:2-47-39(B) expressly states that retroactive AA payment shall be treated separately from any current or future AA benefits negotiated between the adoptive parents after a final decree of adoption.
 {¶ 10} Accordingly, it is evident that, in addressing appellant's application for post-finalization adoption assistance, the hearing officer, administrative hearing examiners, and the trial court should have first examined the requirements under Ohio Adm. Code 5101:2-47-35 for future AA payment. By their express terms, the provisions regarding retroactive AA payment under Ohio Adm. Code 5101:2-47-39 could not be applied until after the requirements of Ohio Adm. Code5101:2-47-35 had been met. It is important to distinguish between these two administrative code sections and analyze them separately for two reasons: (1) the standard used to determine eligibility for future AA payment under Ohio Adm. Code5101:2-47-35 may be different than the standard used to determine eligibility for retroactive AA payment under Ohio Adm. Code5101:2-47-39; and (2) because eligibility for each type of AA payment may be determined under different standards, it is conceivable that a party may meet the standard for future AA payment but fail to meet the standard for retroactive AA payment. However, we can discern no distinct analysis for future AA payment under Ohio Adm. Code 5101:2-47-35 and retroactive AA payment under Ohio Adm. Code 5101:2-47-39 in the prior decisions. Therefore, in this respect, they were erroneously decided.
 {¶ 11} In finding that the analysis in the decisions below was faulty, we realize that courts must give great deference to an administrative agency's construction of a statute or rule that the agency is empowered to enforce. Weaver, supra, at ¶ 12. We are also cognizant that, where administrative officers have followed a fixed rule for a long period of time, the courts will, in the interest of stability, follow such rule if the language to be construed is reasonably susceptible of that construction.State ex rel. Endlich v. Indus. Comm. (1984),16 Ohio App.3d 309, 312, citing State ex rel. Minnich v. Crabill (App. 1936), 22 Ohio Law Abs. 646, 648. However, such great deference may be disregarded or set aside when judicial construction makes it imperative to do so. State ex rel. Endlich, supra, at 311, citing 50 Ohio Jurisprudence 2d (1961) 253, Statutes, Section 254, 268.
 {¶ 12} The law set forth in the administrative code does not appear to comport with the analysis used in the administrative decisions by the trial court or ODJFS. We note that our analysis has not been aided because no administrative or legal decision at any level has acknowledged appellant's pleas that the case was being analyzed incorrectly. Further, nowhere has ODJFS ever responded to appellant's arguments in this regard. Without any input from ODJFS or any analysis in the prior decisions, we must interpret the relevant administrative code provisions. With the above underlying principles in mind, and the correct analytical framework established, we now address appellant's assignments of error.
 {¶ 13} Appellant's first and third assignments of error raise several pure questions of law regarding the standards and laws utilized by the trial court and administrative authorities, as well as factual questions relating to the specific merits of appellant's application. Following the guidelines as explained above, we will first address the questions of law regarding appropriate standards and analytical framework to be applied in these types of cases.
 {¶ 14} Appellant has filed an application for post-finalization AA. As explained above, applications for post-finalization AA are decided under Ohio Adm. Code5101:2-47-35. Ohio Adm. Code 5101:2-47-35(B), effective May 1, 1998, provides that the PCSA must consider eligibility for AA after finalization and negotiate a 1453 agreement with the adoptive parents only if four specific conditions are met. The first condition is:
(1) An ODHS 1451 was not completed or an ODHS 1453 was not executed prior to the final decree of adoption due to one of the following extenuating circumstances.
(a) Information about the child's special needs, other facts relevant to the child's eligibility for AA, or information about the AA program was not presented to or was otherwise unavailable to the adoptive parent(s) prior to the final decree of adoption; or
(b) The child manifested a physical, mental, developmental, or emotional condition after the final decree of adoption as a result of factors in the child's medical history or background of the child's biological parents that existed prior to the final decree of the adoption; or
(c) An administrative error prevented an AA agreement from being signed prior to the final decree of adoption on behalf of an otherwise eligible child.
 {¶ 15} Subsection (B)(1) expressly states that only one of the extenuating circumstances must be met to satisfy the first condition, and these circumstances are clearly articulated in the disjunctive. It has already been found in a prior state hearing decision that appellant was not informed of the AA program prior to finalization of the adoption. This is not in dispute. Thus, the first extenuating circumstance in (B)(1)(a) was present. Although the trial court, the hearing officer, and the hearing examiners all required appellant to prove the circumstances under (B)(1)(b) existed, such was not required to determine appellant's initial eligibility for future AA payment. Therefore, because appellant's circumstances fell under (B)(1)(a), appellant met the first condition under (B)(1).
 {¶ 16} The second condition under (B)(2) requires that there be a determination in the state hearing decision that one or more of the extenuating circumstances in (B)(1) was present and that the conditions set forth in (B)(3) and (B)(4) have been met. The third condition under (B)(3) requires that the child meet all of the remaining eligibility requirements for AA set forth in Ohio Adm. Code 5101:2-47, except for the timeliness standard. The fourth condition under (B)(4) requires the final decree of adoption be issued on or after October 1, 1982.
 {¶ 17} In the present case, the only condition under dispute is (B)(3), which requires that the child meet all of the remaining eligibility requirements for AA. Ohio Adm. Code5101:2-47-29(A) provides that four criteria must be met for any child to be eligible for AA. The first criterion is that the child must be a special needs child as defined in Ohio Adm. Code5101:2-47-30. The parties agreed in their February 19, 2002 agreement to conduct a state hearing to determine whether appellant was a special needs child, and there is no dispute that appellant meets all of the other non-special needs criteria for future AA.
 {¶ 18} Ohio Adm. Code 5101:2-47-30 contains the provisions for determining whether a child is a special needs child. Ohio Adm. Code 5101:2-47-30 provides that, in order for a child to be considered a special needs child, four criteria must be met. The only criterion at issue in the present case is subsection (B), which requires the PCSA to determine that the child has a specific factor or condition that indicates it is not in the child's best interest to be placed with an adoptive parent without the provision of AA and/or medical assistance. Subsection (B) provides that a "specific factor or condition" shall include at least one of nine listed factors and conditions. Appellant's argument focuses mainly on the condition in (B)(7), which states that a child is a special needs child if he or she "[h]as a social or medical history or the background of the child's biological family has a social or medical history which may place the child at risk of acquiring a medical condition, a physical, mental or developmental disability or an emotional disorder."
 {¶ 19} In the present case, we can find no place in the record in which the trial court, the hearing officer, or the hearing examiners made a determination as to whether appellant met any of the nine special needs conditions in Ohio Adm. Code5101:2-47-30(B). Instead, in determining whether appellant was a special needs child, the trial court, the hearing officer, and the hearing examiners all seemingly analyzed whether appellant met the requirements of Ohio Adm. Code 5101:2-47-35(B)(1)(b). However, we already found that, because the circumstance in Ohio Adm. Code 5101:2-47-35(B)(1)(a) was met, appellant was not required to demonstrate the circumstance in (B)(1)(b) to prove eligibility for future AA assistance. Accordingly, for purposes of determining whether appellant was a special needs child for future AA payment eligibility, the trial court, the hearing officer, and the hearing examiners made an error of law in requiring appellant to meet the circumstance in Ohio Adm. Code5101:2-47-35(B)(1)(b).
 {¶ 20} Such error was prejudicial, as the "may place the child at risk of" standard in Ohio Adm. Code 5101:2-47-30(B)(7) is less stringent than the "as a result of" Ohio Adm. Code5101:2-47-35(B)(1)(b). The prejudicial impact of using the standard in Ohio Adm. Code 5101:2-47-35(B)(1)(b) instead of the proper standard in Ohio Adm. Code 5101:2-47-30(B)(7) was manifested in the trial court's decision. To support her claim that she had special needs, appellant submitted a letter from Dr. Bruce P. Meyer. The doctor opined that mental health disorders in a parent's family and abuse of alcohol during pregnancy "have been shown to increase the predisposition of children to ADHD." The trial court concluded that appellant's evidence failed to establish the more stringent causation requirements of Ohio Adm. Code 5101:2-47-35(B)(1)(b). The trial court held that the letter was insufficient to demonstrate "with any degree of certainty" that appellant's ADHD condition was a "definite result" of the mental health disorders in the biological mother's family or a result of the biological mother's alcohol abuse during pregnancy. Thus, the trial court concluded, appellant "failed to demonstrate that she satisfied the requirement set forth in [Ohio Adm. Code 5101:2-47-35]." However, as explained above, appellant should have been required only to show that her biological family had a social or medical history that "may place the child at risk of" acquiring a mental or developmental disability or emotional disorder. For purposes of determining eligibility for future AA payment, appellant should not have been required to demonstrate that she manifested a mental, developmental, or emotional condition that was conclusively "a result of" factors in the background of her biological parents. For the trial court to require such was error.
 {¶ 21} The trial court has never made a determination as to whether appellant's biological family has a social or medical history that "may place the child at risk of" acquiring a mental or developmental disability or an emotional disorder. In the context of appeals from administrative agency decisions, "[i]t is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court." Lorain City Bd. of Edn. v.State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 261. Therefore, we must remand the matter to the trial court to review the evidence that was presented to the administrative agency and to determine whether there is substantial, probative evidence to support the agency's decision, based upon the application of the correct legal standard in Ohio Adm. Code 5101:2-47-30(B)(7). SeeCoker v. Akron Metro. Housing Auth. (July 5, 2001), Summit App. No. 20350. We further note that appellant alleged that she also met several other factors or conditions under Ohio Adm. Code5101:2-47-30(B). We can find no determination in any of the prior decisions relating to these other factors. Therefore, these contentions may also be addressed on remand
 {¶ 22} In addition, as indicated above, it is also important to distinguish between Ohio Adm. Code 5101:2-47-35 and5101:2-47-39 because, as eligibility for future AA payment under Ohio Adm. Code 5101:2-47-35 and retroactive AA payment under Ohio Adm. Code 5101:2-47-39 may be determined under different standards, it is conceivable that a party may meet the standard for future AA payment but fail to meet the standard for retroactive AA payment. Such a circumstance may exist in the present case. If it is determined that appellant's evidence is sufficient only to establish the "at risk" standard under Ohio Adm. Code 5101:2-47-30(B)(7) for purposes of future AA payment, to demonstrate eligibility for retroactive AA payment, appellant will have to meet the requirements of Ohio Adm. Code 5101:2-47-39. Ohio Adm. Code 5101:2-47-39(F) provides:
No retroactive AA payment shall be approved for a child who was determined to be a special needs child solely on the basis of being at risk to acquire a medical condition, a physical, mental or developmental disability or an emotional disorder in accordance with rule 5101:2-47-30 of the Administrative Code unless the child manifested a physical, mental or developmental or emotional condition after the adoption in accordance with rule5101:2-47-35 of the Administrative Code.
 {¶ 23} Accordingly, in the present case, if it is determined that appellant is entitled to future AA payment because she is a special needs child based solely on Ohio Adm. Code5101:2-47-30(B)(7), in order to also receive retroactive AA payment, appellant will have to demonstrate the more stringent standard in Ohio Adm. Code 5101:2-47-35(B)(1)(b), that appellant's disability or disorder was "as a result of" the factors in the background of her biological parents. The prior decisions addressed this issue, but in the wrong context, as explained above. Thus, we believe that the issue of retroactive AA payment and the requirements of Ohio Adm. Code 5101:2-47-39(F) should be addressed at the correct stage of the proceedings and within the proper analytical framework. We also note that no administrative or legal decision has addressed appellant's argument that Ohio Adm. Code 5101:2-47-39(F) should not even apply to the present case because it was repealed July 1, 2000. This issue may also be addressed on remand Therefore, we sustain appellant's first and third assignments of error to the extent that the trial court made an error of law by utilizing the incorrect standards, and we remand the matter to determine whether appellant's evidence met the correct standards, as well as the other aforementioned issues.
 {¶ 24} Appellant argues in her second assignment of error that the trial court erred in applying FCCS's definition of special needs, which includes a requirement for long-term counseling or counseling at developmental milestones for children with moderate emotional or behavioral disorders, because these requirements are inconsistent with state and federal law and policy. In addition to finding appellant was not a special needs child based upon the requirements of the administrative code, the state hearing officer, the administrative hearing examiners, and the trial court also relied upon FCCS's own internal "definition of special needs," which includes 11 categories of special needs. Specifically, all three relied upon category nine, which states, in pertinent part, that a special needs child is:
Any child with moderate or severe emotional/behavioral disability.
A moderate emotional/behavioral disability is one where the child's deviation from age-appropriate behavior significantly interferes with the child's growth and development and ability to relate to others. The child will require long-term counselling [sic] or counselling [sic] at each developmental milestone.
 {¶ 25} The state hearing officer found that appellant's behavior had improved with medication and she did not receive any "long-term counseling." The hearing officer found that annual "counseling" by a physician with regard to taking a prescribed drug did not meet the definition of "long-term counseling." The hearing officer further found that teacher direction in the classroom did not meet the definition of "long-term counseling." The administrative hearing examiners affirmed the state hearing decision, agreeing that appellant's behavior was improving, and there was no indication that she required counseling. The trial court concurred with the prior decisions, finding that there was nothing to infer that Dr. Meyer's counseling was for any other purpose than to monitor appellant's medication. The trial court also found that there was no mention as to the length of time that counseling would be required, and there was no evidence that the annual counseling was during appellant's developmental milestones. Therefore, the state hearing officer, the administrative hearing examiners, and the trial court all found appellant failed to meet FCCS's own internal definition of special needs.
 {¶ 26} Appellant argues that FCCS's definition of special needs is incompatible with the definitions found in Ohio Adm. Code5101:2-47-30. Appellant maintains that FCCS has no authority to add its own, more restrictive eligibility criteria for AA. The Title IV-E plan, asserts appellant, must be administered throughout the state and its subdivisions with consistency, and allowing counties to make more stringent requirements to comply with the federal plan would encourage adoptive families to forum shop for the counties with the most advantageous special needs definitions.
 {¶ 27} Our review of the Ohio Revised Code and the Ohio Administrative Code reveals no authority for the myriad county children services agencies to enact more restrictive definitions for special needs children. ODJFS also fails to direct us to any such provisions or authority that would permit such enactments. Ohio Adm. Code 5101:2-47-29(A) specifically defines four requirements of AA eligibility. None of the four requirements indicate that appellant must comply with any conditions set forth by the local children services agency. Ohio Adm. Code5101:2-47-29(A)(1) indicates that a child must be a special needs child, but provides only that the child be a special needs child as defined in Ohio Adm. Code 5101:2-47-30. Ohio Adm. Code5101:2-47-29(A)(1) does not mention any other requirements to be found a special needs child. Ohio Adm. Code 5101:2-47-30 indicates that, in order to be a special needs child, the local children services agency must determine the child has a specific factor or condition, and that a specific factor or condition "shall" include at least one of the nine specified factors or conditions. Nowhere in Ohio Adm. Code 5101:2-47-30 does it indicate that a child must also meet the special needs definitions of the local children services agency.
 {¶ 28} Thus, the issue is whether anything in Ohio Adm. Code5101:2-47 prevents a local agency from developing its own special needs definitions in addition to the factors and conditions set forth in the administrative regulation, and whether the use of such additional requirements clearly contradicts the spirit and purpose of the rule. See Weaver, supra, at ¶ 11, citing Stateex rel. Endlich, supra. Further, the additional requirements imposed by FCCS also cannot conflict with the federal requirements for AA eligibility. A conflict arises when state law, or in this case county law, stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Hines v. Davidowitz (1941), 312 U.S. 52, 67,61 S.Ct. 399.
 {¶ 29} However, we make no determination on this issue. Although appellant raised this precise issue before the trial court, the trial court failed to address it. We decline to address it for the first time in this appeal. Therefore, to the extent that the trial court erred in failing to address appellant's argument in this respect, the second assignment of error is sustained, and the trial court must also address this issue upon remand We also note that appellant presented several other alternative arguments with regard to FCCS's special needs definitions that were not addressed by the trial court. As we are remanding the entire matter, the trial court may also address these arguments raised by appellant in her original brief before the trial court. Therefore, appellant's second assignment of error is sustained.
 {¶ 30} Accordingly, appellant's three assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed, cause remanded.
Lazarus, P.J., and Petree, J., concur.