OPINION
{¶ 1} Appellants, Gallipolis Care, LLC, Pinecrest Care Center, Ltd., and Gerald E. Vallee, M.D., appeal from the September 15, 2003 journal entry of appellee, the Director of the Ohio Department of Health ("ODH"), granting approval to appellee, Holzer Appellees. Consolidated Health System's ("Holzer's") Certificate of Need ("CON") application to relocate 24 long-term care beds. For the reasons that follow, we reverse.
 {¶ 2} In 1992, Holzer acquired the 24 bed Oak Hill Nursing Home in Jackson County. In 1995, Holzer began constructing the Holzer Senior Care Center ("HSCC") in Gallia County. The new facility was built with a capacity of 100 beds, but could only be licensed for 70 beds. The Holzer facility has never had any deficiencies that warranted a follow-up survey and has never received a jeopardy or substandard care deficiency citation. The distance from the site of the Oak Hill long-term care facility in Jackson County to Holzer Senior Care Center in Gallia County is about 19 miles.
 {¶ 3} In December 2000, Holzer closed the hospital at Oak Hill Nursing Home and began to pursue the possibility of relocating the 24 nursing home beds from the Oak Hill Nursing Home. On December 5, 2001, Holzer closed the Oak Hill Nursing Home. Thus, the last patient's day at Oak Hill was December 5, 2001.
 {¶ 4} Holzer realized that there were certain statutory and regulatory obstacles to the relocation of the nursing home beds. First, under the "12 Month Rule," the Director of ODH cannot approve the relocation of long-term care beds from one site to another unless the facility from which the transfer is being made has been in operation within the past 12 months. Ohio Adm. Code 3701-12-232(A) and (E). Second, the relocation of long-term beds across county lines is prohibited by statute. R.C. 3702.68.
 {¶ 5} In April 2002, Holzer contacted State Representative (now State Senator) John Carey and the Director of ODH about the possibility of seeking a waiver from the state of Ohio to move the 24 beds across county lines. The Director initially denied the request, but Holzer continued negotiations. After representatives from Holzer met with the Director and his staff, Section 26 was inserted into Am.Sub.S.B. No. 261, an extensive appropriations bill that focused on budget issues. Section 26 provided that the Director of Health could accept for review a CON application for the relocation of up to 24 existing nursing home beds in Jackson County to Gallia County.
 {¶ 6} Holzer, on behalf of its wholly-owned nursing home subsidiary, HSCC, filed a CON application with the ODH on August 26, 2002 to relocate the 24 long term care nursing home beds from the Oak Hill Nursing Home, in Jackson County, Ohio to the HSCC in Gallia County. In October 2002, appellants filed written objections to the CON application. ODH conducted an administrative hearing beginning on December 11, 2002 and concluding on February 3, 2003. In an extensive report, the hearing officer recommended approving the application. After receiving and reviewing objections to the report of the hearing officer, the Director of ODH adopted the report and recommendation of the hearing officer, and granted approval to Holzer's CON application.
 {¶ 7} This appeal followed, pursuant to R.C 3702.60(B), with appellant assigning as error the following:
[1.] The Director of ODH's determination that The Holzer Consolidated Health System's (the "Holzer System") Certificate of Need ("CON") Application satisfied the mandatory requirements of Ohio Adm. Code 3701-12-232(A) and (E) pursuant to the doctrine of "equitable tolling" is contrary to law and is not supported by the evidence.
[2.] The Director of ODH's utilization of and reliance on the doctrine of "equitable tolling" to amend and/or rescind the mandatory requirements of Ohio Adm. Code 3701-12-232(A) and (E) exceeds the Director's authority, was promulgated improperly and is contrary to law.
[3.] Section 26 of Amended Substitute Senate Bill ("Am. Sub. S.B." or "S.B." 261, which was relied upon by the Director of ODH in his Journal Entry granting the CON to the Holzer System, is unconstitutional in that it is in violation of the "One-Subject Rule," Section 15(D), Article II of the Ohio Constitution.
[4.] Section 26 of Am. Sub. S.B. 261, which was relied upon by the Director of ODH in his Journal Entry granting the CON to the Holzer System, is unconstitutional in that it is in violation of the Uniformity Clause, Section 26, Article II of the Ohio Constitution.
[5.] Section 26 of Am. Sub. S.B. 261, which was relied upon by the Director of ODH in his Journal Entry granting the CON to the Holzer System, is unconstitutional in that it is in violation of the Equal Protection Clause, the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution.
[6.] Appellants were denied their right to a fair administrative proceeding and impartial tribunal, thereby constituting an unconstitutional Due Process violation.Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.
[7.] The decision of the ODH Hearing Examiner to not permit Appellants to inquire into facts relevant to the Director's bias and to Appellant's Constitutional arguments was erroneous because such evidence and testimony was relevant and material both to the hearing and to the issues preserved for argument in this appeal.
[8.] The decision of the Director of ODH that Appellants failed to meet their burden of proof that there is no need for twenty four (24) additional long-term beds in Gallia County is not supported by reliable, probative, and substantial evidence.
[9.] The decision of the Director of ODH that Appellants failed to meet their burden of proof that the approval of the CON Application would adversely impact the utilization, market share and financial status of all providers in Gallia County and would have an adverse financial impact on the Ohio Medicaid Program and the consumers of long-term care services in Southeastern Ohio is not supported by reliable, probative and substantial evidence, and the standard used by the Director to make this determination was contrary to law.
 {¶ 8} In their first and second assignments of error, appellants challenge the decision to use the doctrine of equitable tolling to toll the application of the 12-month rule. Appellants contend that the Director of ODH was required to deny the CON application because the 12-month rule prohibits the relocation of long term care beds from a facility that has not actively provided long-term care services for a period of time longer than 12 consecutive months.
 {¶ 9} Specifically, the 12-month rule provides that a facility from which beds are being located must have provided long-term care services at some point in the 12 months prior to the time the CON application is decided by the Director of ODH. Ohio Adm. Code Section 3701-12-232(A) and (E) provide in pertinent part:
(A) In addition to review under other applicable provisions of the Administrative Code, the director shall not approve an application for a certificate of need to * * * relocate existing long-term care beds from one site to another unless the application meets all of the criteria prescribed by this rule. * * *
* * *
(E) The facility * * * from which beds are being relocated has operated as a long-term care facility; is licensed, staffed, and equipped to provide long-term care services and actively provides long-term care services; or has not been actively providing long-term care services for less than twelve consecutive months at the time the decision is made on the certificate of need application. * * *
 {¶ 10} Appellees do not contest the applicability of Ohio Adm. Code 3701-12-232(A) and (E) to the application, but instead, argue that the Director appropriately found that the doctrine of equitable tolling should apply. In this case, the hearing examiner acknowledged that there is no express language within the regulations concerning an exception, extension, or avoidance of the 12-month rule. In the absence of any express language permitting tolling, the hearing examiner concluded that equitable tolling was appropriate in order to avoid putting a halt to the review process merely because opponents had filed objections.
 {¶ 11} Strict application of the 12-month rule was applied by this court in Summit Villa Care Ctr., Inc. v. Ohio Dept. ofHealth (1992), 81 Ohio App.3d 761. In Summit Villa, this court determined that the 12-month rule was a valid rule, there was no wrongful delay on the part of the Director in considering the certificate of need application, and the application was filed only two days prior to the lapse of the 12-month period following the facility's last patient care day. Based on these facts, this court held that the facility did not qualify as an existing health care facility under the applicable administrative rules, and the rule mandated that the Director deny the application.
 {¶ 12} Appellees argue that Summit Villa is distinguishable because the application in that case was filed two days before the 12 months would have expired, thus there was no factual record of ODH's tolling policy. In the present case, the application for the CON was filed a little over three months before the 12 months would have expired. Without objection, it is quite possible the application would have been decided before the expiration of the 12-month period. With the filing of objections, there was little chance the application could have been acted upon in time.
 {¶ 13} Appellees cite Cardinale v. Ottawa Regional PlanningComm. (1993), 89 Ohio App.3d 747, for the proposition that when a developer is prevented from satisfying conditions related to an approved project by the legal interventions of a third party, the developer's time to comply with the conditions should be tolled when it is equitable to do so. Appellees argue the same principle applies here, in that appellants should not be able to defeat the application process by requesting a hearing on the application thereby extending the time in which the application will be ruled on past the 12-month limit.
 {¶ 14} Appellees appear to concede that the 12-month rule is a legally mandated deadline. Nevertheless, they construe their position as permissible under principles of equity to give effect to the legislative purpose behind the rule. See Burnett v. NewYork Central Railroad Co. (1965), 380 U.S. 424, 427 (in determining whether equitable tolling is appropriate, the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances). In addition, appellants argue that by applying the doctrine, ODH is merely interpreting its own regulations and therefore their position is entitled to considerable deference.
 {¶ 15} We agree with appellees that this case is distinguishable from Summit Villa, which was decided in 1992. In 1995, the General Assembly amended R.C. 3702.52 to provide that an affected person may object and, if so, an administrative hearing must be held before the Director makes a decision on an application. The effect of this amendment is that if a facility has ceased operation, an objection could prevent the Director from making a decision on an application before the 12-month period elapses.
 {¶ 16} Here, Holzer acted with due diligence to submit its application in a timely manner, and, but for the objections of appellants, it is likely the application would have been decided before the 12-month deadline. Moreover, it appears that application of the doctrine is appropriate here because it effectuates the purpose behind the rule — to require a facility to act diligently in submitting its application for the relocation of beds while still providing a reasonable time for full and fair review of the application and a decision on the application. ODH has taken the position that in a case where the Director would have rendered a decision before the 12-month period expired but for the objection of an affected party, the doctrine of equitable tolling should apply. Thus, in order to give effect both to the definition of an existing health care facility and to allow for a full and fair opportunity for affected parties to file objections, ODH has interpreted the legislation to allow for equitable tolling of the 12-month rule. An agency's interpretation of its own regulations is subject to deference by the courts unless it is at odds with the regulation itself. Charvat v. Dispatch Consumer Services, Inc.,95 Ohio St.3d 505, 2002-Ohio-2838 at ¶ 35-38. We find this interpretation reasonable and not at odds with the legislative intent, particularly when the regulation and amended legislation are read together. The impracticality of appellants' argument that Holzer could have reopened the facility for even one day during the application process to comply with the 12-month rule highlights the more reasonable interpretation of the regulation by ODH. Accordingly, the first and second assignments of error are not well-taken and are overruled.
 {¶ 17} In their third, fourth, and fifth assignments of error, appellants contend the legislation inserted into the budget bill is unconstitutional as it violates the one-subject rule, the uniformity clause, and the equal protection clause. As a threshold matter, Holzer raises the issue of appellants' standing to raise their constitutional claims.
 {¶ 18} Holzer contends that appellants lack standing because the legislation conferred the beneficial opportunity to acquire and relocate nursing home beds from Jackson County to Gallia County, and appellants, as nursing home operators in Gallia County, had the same opportunity to relocate beds as did Holzer. Holzer also argues that appellants lack standing to assert the claims of potential applicants outside of Jackson and Gallia County.
 {¶ 19} We find Holzer's standing argument to be without merit. By means of the legislation inserted into the budget bill, Section 26 of Am.Sub.S.B. No. 261, Holzer was permitted to obtain approval for a project that no other nursing home applicant in the state of Ohio was able to do. Singling out one county from a statewide statutory moratorium on relocating nursing home beds across county lines to a county that already has an excess of beds qualifies as creating an adverse impact on appellants who operate existing nursing homes in the affected county. Therefore, we find the appellants have shown an injury in fact sufficient to confer standing to raise their constitutional claims.
 {¶ 20} In their third assignment of error, appellants contend that Section 26 of Am.Sub.S.B. No. 261 violates Article II, Section 26 of the Ohio Constitution, the Uniformity Clause, because the law is of a general nature, and does not operate uniformly through Ohio. Holzer counters that the law has the potential to apply throughout the state.
 {¶ 21} Specifically, Section 26 of Am.Sub.S.B. No. 261, the legislation at issue in this case, provides as follows:
Notwithstanding section 3702.68 of the Revised Code, the Director of Health may accept for review under section 3702.52 of the Revised Code an application for a certificate of need approving the relocation of up to twenty-four existing nursing home beds in Jackson County to Gallia County.
 {¶ 22} The Supreme Court of Ohio discussed the Uniformity Clause in Put-In-Bay Island Taxing Dist. Auth. v. Colonial,Inc. (1992), 65 Ohio St.3d 449, as follows:
Section 26, Article II requires that "[a]ll laws, of a general nature, shall have a uniform application throughout the state
* * *." (emphasis added.) Section 26, Article II applies to all subjects except those explicitly and exclusively provided for by other sections of the Constitution. See Mallison, General Versus Special Statutes in Ohio (1950), 11 Ohio St.L.J. 462, at 463-464. Further, it is well settled that this section of the Constitution is mandatory and not merely directory. See State ex rel. Wirschv. Spellmire (1902), 67 Ohio St. 77 * * *. In addition, this court has observed that "* * * `uniform operation throughout the state' means universal operation as to territory; it takes in the whole state. And, as to persons and things, it means universaloperation as to all persons and things in the same condition orcategory. When a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state."
(Emphasis added.) Id. at 450-451.
 {¶ 23} Thus, in order to determine if legislation violates the uniformity clause, the court must first consider whether the law is of a general nature and second, whether the law operates uniformly throughout the state. A law is general if the subject does or may exist in, and affect the people of, every county in the state. Simmons-Harris v. Goff (1999), 86 Ohio St.3d 1, 12. In Simmons, the Supreme Court of Ohio determined that schools are a subject of general nature and because the School Voucher Program was of a general nature the Uniformity Clause applied. Id. The court then determined that the former school voucher program that was limited to one school district violated the Uniformity Clause. Id. The court then went on to determine that the amended version of the school voucher program, although extremely limited in its current application, did not violate the Uniformity Clause. Id. at 14. This was because the court found that the amended statute operated upon every person included within its operative provisions and those operative provisions were not arbitrarily or unnecessarily restrictive. Id.
 {¶ 24} In this case, the subject matter of the provision at issue is the relocation of long-term care nursing home beds. Although our research does not disclose that such laws have been declared by the courts to be of a general nature, we find that the subject matter of the legislation does affect the people of every county in the state. For example, there is currently a statewide moratorium on CON applications seeking to relocate nursing home beds across county lines. R.C. 3702.68. Therefore, we conclude that the legislation at issue here should be considered to be a law of a general nature in connection with the uniformity clause.
 {¶ 25} With respect to the second inquiry, whether the statute operates uniformly across the state, appellants contend that the legislation affords preferential treatment only to a prospective CON applicant from Jackson County, that the legislation was targeted specifically for the Holzer System, that all other potential applicants from the other 87 Ohio counties are still prohibited from applying to relocate beds across county lines. Holzer, however, argues the legislation at issue operates uniformly because nothing in the statute would limit a person in another part of the state from acquiring nursing home beds in Jackson County and relocating them to Gallia County.
 {¶ 26} Appellants disagree with Holzer's assertion that the legislation does not expressly limit the number of applications that can be submitted. As noted above, the relevant language of Section 26 of Am.Sub.S.B. No. 261 reads as follows:
Notwithstanding section 3702.68 of the Revised Code [statewide moratorium], the Director of Health may accept for review under section 3702.52 of the Revised Code an application for a certificate of need approving the relocation of up to twenty-four existing nursing home beds in Jackson County to Gallia County.
(Emphasis added.)
 {¶ 27} Appellants take the position that the term "an application" in the above-referenced section is synonymous with one application, the specific application made by Holzer seeking to relocate nursing home beds from Jackson to Gallia County. We agree.
 {¶ 28} In reaching this conclusion, it appears that the statute does not operate in a uniform manner within the meaning of the uniformity clause because it does not have the potential to apply to any county in the state or any other nursing home operators other than Holzer. By limiting the opportunity to relocate nursing home beds to "an application" the statute, by its own terms, prevents prospective operation upon other similarly situated nursing homes.
 {¶ 29} We recognize that the Supreme Court of Ohio has held that uniformity does not require that the statute actually have current application in every county, and may even apply to only one case. However, its terms must be uniform and it must as least have the possibility of applying to cases similarly situated in the future. Kelleys Island Caddy Shack, Inc. v. Zaino,96 Ohio St.3d 375, 377, 2002-Ohio-4930. Here, the statute was so narrowly tailored as to apply to only one specific situation involving Holzer's 24-bed Oak Hill Nursing Home in Jackson County and the new Holzer Senior Care Center in Gallia County. For this reason, the statute violates the Uniformity Clause of the Ohio Constitution. The third assignment of error is well-taken and sustained.
 {¶ 30} In their fourth assignment of error, appellants contend that Section 26 of Am.Sub.S.B. No. 261 violates Section15(D), Article II, Ohio Constitution, the one-subject rule, which provides that no bill of the General Assembly "shall contain more than one subject, which shall be clearly expressed in its title."
 {¶ 31} The Supreme Court of Ohio in State ex rel. Dix v.Celeste (1984), 11 Ohio St.3d 141, 145, described the purpose of this provision:
* * * [W]hen there is an absence of common purpose or relationship between specific topics in an act and when there are no discernible practical, rational or legitimate reasons for combining the provisions in one act, there is a strong suggestion that the provisions were combined for tactical reasons, i.e.,
logrolling. Inasmuch as this was the very evil the one-subject rule was designed to prevent, an act which contains such unrelated provisions must necessarily be held to be invalid in order to effectuate the purposes of the rule.
 {¶ 32} Only a "manifestly gross and fraudulent violation" of the single-subject provision will cause a court to find a statute unconstitutional. State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451, 494. The "mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics." Id. at 496.
 {¶ 33} "[T]he one-subject provision is not directed at plurality but at disunity in subject matter." Id., citing Dix,
at 146, and State ex rel. Hinkle v. Franklin Cty. Bd. ofElections (1991), 62 Ohio St.3d 145, 148. Assessment of an enactment's constitutionality will be primarily a matter of a "case-by-case, semantic and contextual analysis." Dix at 145.
 {¶ 34} In this case, appellants characterize Am.Sub.S.B. No. 261 as a budget bill, and Holzer characterizes the legislation as a budget correction bill. Regardless of whether one characterizes the legislation as a budget bill, or a budget correction bill, Am.Sub.S.B. No. 261 qualifies as an appropriations bill. Appropriations bills are different from other Acts of the General Assembly because necessity requires that they "encompass many items, all bound by the thread of appropriations."Simmons-Harris, at 16. Riders attached to appropriations bills, however, must be viewed with caution because "[r]iders are provisions that are included in a bill that is `"so certain of adoption that the rider will secure adoption not on its own merits, but on [the merits of] the measure to which it is attached."'" Id., quoting Dix, at 143, quoting Ruud, "No Law Shall Embrace More Than One Subject" (1958), 42 Minn.L.Rev. 389, 391.
 {¶ 35} In Simmons-Harris, the Supreme Court of Ohio held that the school voucher program violated the one-subject rule because it was "in essence little more than a rider attached to an appropriations bill." Id. at 16. The court found a blatant disunity between the school voucher program and other items contained in the appropriations bill. Id. In addition, the court could find no rational reason for inclusion of the program in the bill other than for tactical reasons. Id. at 16-17.
 {¶ 36} Holzer argues that because the state's moratorium upon the addition of new nursing home beds has been contained in previous state budget bills, and because this legislation merely creates a narrow exception to the moratorium, the legislation passes constitutional muster. We disagree.
 {¶ 37} Section 26 of Am.Sub.S.B. No. 261 is, in essence, a rider attached to an appropriations bill that contains many unrelated subjects. Section 26 does not share a common purpose with and has no discernible practical or rational relationship to the other provisions in the enacted bill. Section 26 is buried among pages of provisions that relate to government spending, bears no relation to the topics preceding and following the provision, and unlike other provisions in the bill, it bears no relation to the utilization of governmental resources or how budgetary funds are to be disbursed. Additionally, the record indicates that the section was inserted into the bill late in the process and for what appear to be tactical reasons. Thus, Section 26 of Am.Sub.S.B. No. 261 that provides for the relocation of long term nursing home beds is unconstitutional in that it violates the one-subject provision of Section 15(D), Article II
of the Ohio Constitution.
 {¶ 38} Because Section 26 is unconstitutional, it is null and void. Invalidity of the subject provision does not affect the other provisions of the enacted bill of which the unconstitutional provision is a part. See, e.g., State v.Hochhausler (1996), 76 Ohio St.3d 455, 464-465. Accordingly, we sever the offending portion of Am.Sub.S.B. No. 261 to cure the defect and save the portions of the enacted bill which relate to a single subject. See, e.g., Hinkle, at 148-149; State ex rel.Ohio Civ. Serv. Emp. Assn. v. State Emp. Relations Bd.,152 Ohio App.3d 551, 559, 2003-Ohio-2021. The fourth assignment of error is well-taken and sustained.
 {¶ 39} Having found the legislation in question violates both the uniformity clause and the one-subject rule of the Ohio Constitution, appellants' remaining arguments including equal protection, denial of a fair administrative proceeding, bias on the part of the Director, and a lack of reliable, probative, and substantial evidence, are rendered moot.
 {¶ 40} Based on the foregoing, appellants' first and second assignments of error are overruled, appellants' third and fourth assignments of error are sustained, appellants' fifth, sixth, seventh, eighth, and ninth assignments of error are overruled as moot, and the order of the Director of the Ohio Department of Health is reversed.
Order reversed.
Bryant and Petree, JJ., concur.