OPINION
{¶ 1} Appellants, Pleasant Lake Nursing Home, Inc., Ridge-Pleasant Valley, Inc. and Broadview Nursing Home, Inc., all managed by Legacy Health Services, Inc. ("Legacy"), and Tandem Regional Management of Virginia, Inc. ("Tandem"), appeal from the decision of the director of the Ohio Department of Health ("ODH") granting a certificate of need ("CON") to appellee, Manor Care Health Services, Inc. ("Manor Care"). Because the decision is supported by reliable, probative and substantial evidence and is in accordance with law, we affirm.
 {¶ 2} On February 3, 2003, Manor Care, a subsidiary of Manor Care of America, which, in turn, is a subsidiary of Manor Care, Inc., filed a CON application with the ODH seeking approval for the construction of a new 120-bed skilled nursing facility in Parma, Cuyahoga County, Ohio, to be called "Manor Care of Parma." According to the application, 100 of the beds were to be purchased and transferred from Forest Hills Center for Rehabilitation ("Forest Hills") in Cleveland, Ohio; 20 beds were to be transferred from Manor Care's North Olmstead facility. Manor Care, through Dale Markowitz, effected a lot split that divided the proposed site into two lots. On one lot is Arden Courts, an assisted living facility run by Manor Care that houses Alzheimer's patients; the other lot, which Manor Care also owns, is for the proposed project. The proposed project will also include a 30-bed Alzheimer's unit. In accordance with zoning laws, Manor Care must obtain a conditional use permit to construct the facility.
 {¶ 3} The CON application was declared complete on June 3, 2003. After an adjudication hearing, the hearing examiner recommended denial, premised on one issue, of Manor Care's application; the director rejected the hearing examiner's report and granted the CON to Manor Care.
 {¶ 4} In this consolidated appeal, Legacy and Tandem assign two identical errors:
First Assignment of Error: The June 30, 2004 Journal Entry of the Ohio Department of Health (the "Department") granting CON File 8922-01-03 (the "Decision") is not supported by reliable, probative, and substantial evidence.
Second Assignment of Error: The Decision is not in accordance with law, including R.C. § 3702.53(B) and O.A.C. §§ 3701-12-232(G) and 3701-12-08(G).
 {¶ 5} Tandem assigns a third error:
Third Assignment of Error: The Journal Entry fails to state the Director's decision, neither granting nor denying the certificate of need application.
 {¶ 6} Although the enumerated assignments of error are few, appellants raise numerous arguments in support. Further, because Legacy and Tandem assert, with noted exceptions, the same arguments, we will refer to them collectively as appellants.
 {¶ 7} Tandem's third assignment of error challenges the form of the director's decision. This court dismissed the initial appeal on this application because the director failed to expressly grant or deny Manor Care's CON application. Noting our opinion dismissing the appeal, the director subsequently granted the application to Manor Care. A final appealable order now exists, and we have jurisdiction to hear appellants' appeal. Tandem's third assignment of error is overruled.
 {¶ 8} R.C. 3702.60(F)(3) provides that in an appeal to this court from a decision of the director, "[t]he court shall affirm the director's order if it finds, upon consideration of the entire record and any additional evidence admitted * * * that the order is supported by reliable, probative and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order."
 {¶ 9} "Although this court may engage in a very limited weighing of the evidence upon an appeal of this nature, we may not substitute our judgment for that of the Department as to the credibility of witnesses and the weight to be given the testimony." In re Knolls of Oxford,
Franklin App. No. 02AP-514, 2003-Ohio-89, at ¶ 13, citing In re ManorCare of Kettering (Dec. 31, 1992), Franklin App. No. 92AP-208. Rather, a reviewing court must give due deference to the administrative resolution of evidentiary conflicts. In re Christian Care Home of Cincinnati, Inc.
(1991), 74 Ohio App.3d 453, citing Univ. of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108. Analysis of whether the director's decision is supported by the evidence is essentially a question of the absence or presence of the requisite quantum of evidence. Id.
 {¶ 10} Pursuant to R.C. 3702.52 and Ohio Adm. Code 3701-12-08(E), the director, upon receipt of an application, reviews the application to determine if the information is complete. If the director feels more information is necessary, the director may make up to two requests for additional information needed to complete an application. R.C. 3702.52(B). After a second request for information, the director must either send a notice of completeness to the applicant or deem the application incomplete. Here, the director made an additional request for information; Manor Care responded, and a notice of completeness was mailed June 3, 2003. ODH received written objections from residents and long-term care facilities within Cuyahoga County. On August 7, 2003, a public informational hearing was held pursuant to a request made under R.C. 3702.52(B).
 {¶ 11} If the director receives written objections to an application within 30 days after mailing the notice of completeness, the director must notify the applicant and assign a hearing examiner to conduct an adjudication hearing in accordance with R.C. Chapter 119. R.C.3702.52(C)(3). Here, the required adjudication hearing was held on September 30, 2003 through October 2, 2003, December 15, 2003, and January 15 and January 16, 2004. R.C. 3702.52(C)(3) provides that the party challenging the CON bears the burden of proving by a preponderance of the evidence that the project is not needed or that granting the CON would not be in accordance with R.C. sections 3702.51 to 3702.62 or the rules adopted under R.C. 3702.57.
 {¶ 12} Ohio Adm. Code 3701-12-20 sets forth the criteria the director must consider in determining whether to grant a CON to the applicant. It specifies that the director "shall apply each of the criteria prescribed in this rule, as applicable, when reviewing an application for a certificate of need, in addition to any criteria specific to the application that are established by this chapter of the Administrative Code."
 {¶ 13} Appellants initially argue the director's decision is not in accordance with law because Manor Care was permitted to supplement its CON application with evidence introduced at the adjudication hearing. Specifically, Manor Care was permitted to introduce evidence at the hearing related to (1) a plan of care for the residents of Forest Hills, from which Manor Care was purchasing 100 beds, and (2) the feasibility of renovating Forest Hills as opposed to relocating the beds.
 {¶ 14} Appellants contend that pursuant to Ohio Adm. Code 3701-12-08(G), the CON application review process is complete after the staff report and recommendation is issued; therefore, they contend, no additional evidence may be presented at the adjudication hearing or otherwise, and the director may consider no additional evidence in making a decision on the application. Ohio Adm. Code 3701-12-08(G) provides that after notice is mailed indicating the application is complete, "the applicant may supply and the director may request additional information pertinent to review of the application in relation to the criteria established by this chapter."
 {¶ 15} Appellants maintain this section allows an applicant to furnish additional evidence only while ODH staff is reviewing the application and, appellants argue, the application review process ends once ODH staff makes a recommendation to the director. Appellants contend that the adjudication hearing is simply an opportunity for the objectors, not the applicant, to present evidence that the proposed project does not meet the applicable CON review criteria. According to appellants, allowing an applicant to furnish additional evidence at the hearing subverts the review process because the report and recommendation by ODH staff is based solely on the application and supplemental information provided.
 {¶ 16} The director determined Manor Care was permitted to introduce supplemental evidence at the adjudication hearing in relation to the CON criteria. The director stated that Ohio Adm. Code 3701-12-08(G) permits an applicant to present, or the director to request, additional evidence pertinent to the review criteria. In interpreting an agency's statute or rule, a reviewing court "must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." In re 138 Mazal Health Care,Ltd. (1997), 117 Ohio App.3d 679, 685, quoting State ex rel. McLeanv. Indus. Comm. (1986), 25 Ohio St.3d 90. A reviewing court need not find the agency's construction of a rule is the only reasonable one or even that it is the result the court would have reached. Id.
 {¶ 17} Here, the director's interpretation is not at odds with the regulation itself; rather, the language suggests the director may request additional information at any time if the information may assist in making a determination. In re Holzer Consol. Health Sys., Franklin App. No. 03AP-1020, 2004-Ohio-5533, at ¶ 16 (noting that "[a]n agency's interpretation of its own regulations is subject to deference by the courts unless it is at odds with the regulation itself"). Because the director's interpretation of Ohio Adm. Code 3701-12-08(G) is reasonable, this court should defer to it.
 {¶ 18} Moreover, R.C. 119.09 specifically provides that "the agency may require the attendance of such witnesses and the production of such books, records, and papers as it desires[.] * * * The agency shall pass upon the admissibility of evidence, but a party may at the time make objection to the rulings of the agency thereon." This section implies, and the ODH has so interpreted it, that the adjudication hearing is a de novo review of the application. Indeed, the director has discretion to "order additional testimony to be taken or permit the introduction of further documentary evidence" even after the hearing examiner issues its written report setting forth findings of fact and conclusions of law. R.C. 119.09. Further, even at the public hearing, Ohio Adm. Code 3701-12-12
allows any person present at the hearing to present testimony, oral or written arguments, "and evidence relating to the matter which is the subject of the hearing." Based on these provisions and ODH's interpretation to allow evidence that will assist it in making a determination, appellants' argument is without merit.
 {¶ 19} Appellants next argue that Manor Care failed to provide sufficient information regarding a plan of care for the residents of Forest Hills and failed to disclose information regarding the cost and feasibility of renovating Forest Hills rather than relocating the beds.
 {¶ 20} Pursuant to Ohio Adm. Code 3701-12-23.2(A), the director shall not approve an application to relocate existing long-term care beds from one site to another unless the application meets the criteria set forth in the section, in addition to the other review criteria. Ohio Adm. Code3701-12-23.2(C) provides the applicant must provide documentation of "a feasible plan to care for the residents served in the beds being replaced or relocated until the new beds are operational and thereafter. The application shall state whether those residents will be admitted to the new beds and the procedure for facilitating availability of the beds to the residents." The hearing examiner agreed with appellants and found that Manor Care failed to (1) provide sufficient information demonstrating that the residents would be admitted to the new beds, and (2) state the procedure for facilitating availability of the beds. The director overruled the hearing examiner, finding sufficient evidence was presented at the hearing and, in any event, the issue was moot because Forest Hills had closed at the time of the hearing.
 {¶ 21} Manor Care filed its CON application in February 2003. As of July 2003, 40 residents remained at Forest Hills. Although Manor Care did not supplement the application with information of what it intended to do with the current residents at Forest Hills, ODH did not request additional information on that issue; rather, it declared the application complete on June 3, 2003. In addition, the purchase agreement between Manor Care and Forest Hills provided that Forest Hills would comply with all regulatory requirements, including caring for the residents until the beds were relocated or discharged.
 {¶ 22} Significantly, the facility at Forest Hills closed in September 2003. Dennis Conley, CEO of the Schroer Group that owns Forest Hills, testified that all residents were relocated to other nursing homes in the surrounding area. Conley decided to close the facility due to the fact that it was losing substantial money. Donald Reppy, Director of Health Planning for Manor Care, Inc., testified that any residents formerly located at Forest Hills would "absolutely" be accepted at the new facility. Based on Conley's and Reppy's testimony, coupled with the fact that Forest Hills indeed had closed, reliable, probative and substantial evidence supports the director's finding that Manor Care complied with Ohio Adm. Code 3701-12-23.2(C).
 {¶ 23} Appellants also contend that, because Manor Care failed to provide sufficient information pertaining to the feasibility of renovating Forest Hills, as opposed to relocating the beds, the director erred in granting the CON. Pursuant to Ohio Adm.Code. 3701-12-23.2, an applicant must demonstrate "that replacement of the facility or relocation of the beds is more cost-effective or otherwise more feasible for the applicant than renovation of the facility * * * from which the beds are being relocated. This information shall be provided in the form of a detailed study of the respective costs of renovation and replacement or relocation." The hearing examiner and director found that Manor Care provided sufficient information on this issue, even though Manor Care did not provide a "detailed study." The hearing examiner stated that "[t]he applicant, through the testimony of Mr. Conley, has provided evidence that the relocation of the beds is more cost effective or more feasible for the applicant than renovation of the facility from which the beds are being relocated." (Report and Recommendation, at 132.)
 {¶ 24} Forest Hills was built in 1929, with an addition in 1950, and it offered 200 beds. Conley described Forest Hills as a very old, three-story building in inner city Cleveland. Conley testified that, by the end of 2002, the average census of residents was only 55; the facility was losing substantial money. According to Conley, the area where Forest Hills was located was over-bedded, and a large number of the facilities maintained low occupancy rates. Conley stated that Cleveland's mayor and the Department of Aging agreed the area was over-bedded. According to Conley, he made the decision to close Forest Hills, accomplished in September 2003, on the basis of economics.
 {¶ 25} Conley further testified that he considered alternatives to closing the facility and relocating the beds, but found the cost prohibitive. The facility required new plumbing, a new heating plant, and other new infrastructure; moreover, according to Conley, demolition costs would be close to one million dollars. Because of the high cost, and because he would not receive a tax reduction or any reimbursement, Conley determined renovations were not feasible. Conley's testimony provides reliable, probative and substantial evidence supporting the director's finding that Manor Care sufficiently complied with Ohio Adm. Code3701-12-23.2(D). The fact that Manor Care did not provide a "detailed study" of potential costs is not determinative. In re Gables at GreenPastures (Dec. 2, 1999), Franklin App. No. 99AP-431 (considering testimony at the adjudication hearing on the issue of renovation as opposed to replacement or relocation of beds where the report the applicant provided did not contain an estimate of the costs involved in renovating).
 {¶ 26} Appellants next contend Manor Care provided materially misleading information to ODH concerning zoning matters. Ohio Adm. Code3701-12-20(B)(2) provides that, for projects involving new construction, the director shall consider the current and projected zoning status of the project site. Appellants note that Manor Care's initial zoning application for a conditional use permit included a design for a partial one-story and partial two-story facility. By contrast, in the CON application Manor Care describes only a one-story facility. Based on the discrepancy, appellants claim Manor Care misrepresented to ODH the nature of the project. In response, Manor Care states that it submitted revisions to its initial application for a conditional use permit, and such revisions indicate a one-story building, consistent with that described in the CON application. Appellants counter that, because Manor Care had not yet obtained zoning approval, the CON must be denied.
 {¶ 27} Although the director must consider the current and projected zoning status of the project site, lack of final zoning approval is not grounds for denying a CON. In re Kettering, supra. If a conditional use permit is not approved, Manor Care simply cannot build the facility on the particular site indicated in the CON application. Id. (noting that if "zoning approval is not obtained, the CON in effect lapses or dies because the facility cannot be built"). ODH consultant Christine Kenney confirmed that CON approval is not contingent on zoning approval.
 {¶ 28} Additionally, appellants' contention that Manor Care misrepresented the proposed project to ODH is without merit. Larry Godla, Vice President of development and construction for Manor Care, testified the project is a one-story facility. According to Godla, the initial application representing a partial one-story, partial two-story building was revised on October 30, 2003; the current application for a conditional use permit represents a one-story facility, consistent with that represented in the CON application. Godla's testimony sufficiently explains why a discrepancy existed.
 {¶ 29} Appellants also argue the project is not needed. Ohio Adm. Code 3701-122-0(E) requires the director to consider the need of the population served or proposed to be served for the services to be provided. The director must examine: (1) the current and proposed primary and secondary service areas and their population, (2) travel times and the accessibility of the project site, (3) current and projected patient origin data, by zip code, (4) any special needs and circumstances of the applicant or population proposed to be served, and (5) special needs related to any research activities. Ohio Adm. Code 37011-2-20(E)(1) through (5).
 {¶ 30} The hearing examiner and director found that, because the beds to be used for the project originate within Cuyahoga County, the number of beds within the county remains unchanged. They further noted 279 vacant beds in the primary service area ("PSA"), and 24 vacant beds in the secondary service area ("SSA"). Although the hearing examiner and director found that existing facilities in the PSA and SSA operate with an 86 percent occupancy, they additionally determined that, despite the excess beds in the service areas, the objectors failed to prove the project is not needed.
 {¶ 31} Bed need is only one factor to consider in determining a CON application. The Center of Town v. Shaker Heights Care Ctr. (Oct. 4, 1990), Franklin App. No. 89AP4-05. Based on a Claritas report, a source ODH regularly relies on, the population in the service areas is expected to increase by nine percent between 2002 and 2007. The report indicates that, although the population 65 and older in the PSA and SSA is expected to decrease, the population of individuals 85 years and older, the heaviest users of nursing homes, is expected to increase by eight percent between 2002 and 2007.
 {¶ 32} The Claritas report also addresses bed to population ratios, noting the state average is 59 beds per thousand individuals over age 65. By contrast, the average in Cuyahoga County is 57, and the area proposed for Manor Care's project has 43 beds per thousand. The North Olmstead area from which 20 beds will be relocated has 72 beds per thousand, while the Forest Hills area, from which 100 beds will be relocated, has 62 beds per thousand. As a result, the beds subject of Manor Care's application are being relocated from an area with a higher bed to population ratio to an area with a lower bed to population ratio. Moreover, the proposed project includes a 30-bed Alzheimer's unit, the addition of which still will provide services to only two percent of those in need of such services.
 {¶ 33} Significantly, at the time of the hearing on Manor Care's application, two of Legacy's facilities in Manor Care's PSA and SSA, Parkside Villa and Pleasant Lake Villa, had CON applications pending to add beds to those facilities: 36 for Parkside Villa and 9 for Pleasant Lake Villa. Tandem filed no objection to Legacy's applications. Legacy argued, in connection with its applications, that a growing need existed in the community for private nursing home beds. Legacy also pointed out in its applications that it was seeking to transfer beds from areas with a higher bed to population ratio to areas with a lower bed to population ratio. Parkside Villa maintains occupancy rates near 95 percent; Pleasant Lake Villa maintains occupancy rates between 95 and 96 percent. Indeed, Prentice Thompson, Legacy's chief operating officer, conceded to the need for some beds in the service areas. Because reliable, probative and substantial evidence supports the director's determination that the project is needed, we find unpersuasive appellants' argument to the contrary.
 {¶ 34} Appellants next maintain the project is not financially feasible. Pursuant to Ohio Adm. Code 3701-12-20(J), the director shall consider the short-term and long-term financial feasibility and cost effectiveness of the project, as well as its financial impact upon the applicant and other providers. The director must evaluate: (1) the availability of financing for the project, (2) the operating costs specific to the project and, based upon review of balance sheets, cash flow statements and available audited financial statements, the effect of the costs on the operating costs of the facility as a whole, (3) the effect of the project on charges and payment rates for the facility as a whole, (4) the costs and charges associated with the project as compared to costs and charges associated with similar services by other providers, and (5) the historical performance of the applicant and related parties in providing cost-effective health care services.
 {¶ 35} Appellants assert Manor Care overstated its anticipated revenues and understated its anticipated operating costs. The parties presented conflicting opinions on the reasonableness of the projections. Manor Care projected its per patient day profit at $37 and estimated its private pay utilization at 30 percent. Legacy offered the testimony of Bert Cummins, a certified public accountant with 30 years experience in long-term care businesses and regulatory accounting procedures. Cummins generally attacked the financial projections Manor Care submitted.
 {¶ 36} Further, Legacy's Prentice Thompson, Carolyn Gibson, divisional Vice President for Tandem, and Richard Shook, Regional Vice President for Tandem, all testified that Manor Care overstated its projected revenues, understated its operating costs, and overestimated its percentage of private pay patients. According to Thompson, private pay patients comprise only 20 percent of the population in surrounding facilities. Similarly, ODH consultant Kenney testified that Manor Care's projected operating statement reflecting income of $1,551,020 is high for the third year of a new facility. Appellants also note that Manor Care did not include in its projections any interest accrued during construction.
 {¶ 37} The hearing examiner and director found that the operating costs and revenue projections required in the CON application does not foster precision; the nature of the required information makes what is "reasonable" vary widely among facilities. Reasonable projections are based on operational histories of similar facilities within the service areas and "may vary widely among parties yet remain within the reasonable range." (Report and Recommendation, at 150.) The director found Manor Care's projections as to occupancy rates, revenues, operating costs, and impact to other providers in the PSA and SSA within a reasonable range.
 {¶ 38} Manor Care, Inc., the parent corporation, operates 295 skilled nursing facilities and 76 assisted living facilities. Manor Care has constructed approximately 100 new buildings. Due to its size, Manor Care has extensive purchasing power that allows it to purchase materials at a lower cost than can smaller entities. David Parker, assistant general manager for a central division of Manor Care, Inc., testified that the central division has 83 buildings stretching from Ohio to Illinois, and profit and loss statements are generated each month for each facility. Parker testified that an operating statement is analogous to a profit and loss statement. He further stated the central division of Manor Care experiences 30 percent private pay utilization, consistent with the nationwide average. Parker stated that, in his experience with new facilities constructed in the appropriate market, 30 percent private pay utilization can be expected.
 {¶ 39} Godla, Vice President of development and construction for Manor Care, Inc., testified that Manor Care's financial analysis group, a group that analyzes pro formas to assess costs, provided the financial projections in the CON application. Godla testified the projections are based on Manor Care's operational history, and he stated the projected revenues and costs are reasonable considering that new facilities attract a higher payor mix and run more efficiently than do older facilities. The payor mix for Manor Care of Parma is expected to be consistent with the average at other Manor Care facilities: 30 percent private, 12 percent Medicare, 50 percent Medicaid, and 8 percent insurance. Godla also testified that no interest will accrue during construction because the project is being financed through corporate funding.
 {¶ 40} Specifically, Manor Care presented evidence that it will finance the proposed project through cash and cash equivalents. Manor Care, Inc., the ultimate parent company, had $26.6 million in cash and cash equivalents as of December 31, 2001; the hearing examiner found these funds available and more than sufficient to finance the project. Further, Manor Care, Inc. draws revenues of approximately three billion dollars per year.
 {¶ 41} Although appellants disagreed with the overall projections Manor Care submitted, they did not demonstrate the proposed project was otherwise financially infeasible. To the contrary, the evidence demonstrates that Manor Care has more than sufficient funds to construct and run the facility. On the evidence presented, the hearing examiner and director reasonably could conclude the project was financially feasible in both the short and long term.
 {¶ 42} In a related argument, appellants claim that Manor Care improperly excluded certain costs associated with the project from the total project cost, in violation of R.C. 3702.53(B), Ohio Adm. Code3701-12-23.2(G), and 3701-12-20(B)(1). Both Ohio Adm. Code 3701-12-23.2(G) and 3701-12-20(B)(1) require the applicant to document the costs of the project. Appellants claim Manor Care violated said provisions by excluding costs related to construction of bathroom facilities, kitchen space, and laundry facilities.
 {¶ 43} R.C. 3702.53(B) provides that no person shall separate portions of any proposal for any reviewable activity to evade the requirements of the review criteria. The CON application requires a full scope financial feasibility study for all projects exceeding $5 million dollars and, if the project exceeds $10 million, the study must be prepared or reviewed by an independent public accountant. Appellants claim Manor Care intentionally excluded the noted costs to avoid the necessity of a full scope financial feasibility study prepared or reviewed by an independent accounting firm. Reppy testified he intended to create a project that cost less than $10 million. The proposed project cost is $9,870,000; if the excluded costs were included, the project cost would be approximately $10,865,000.
 {¶ 44} Pursuant to R.C. 3702.51(T), in the context of CON applications, reviewable activity does not include construction, repair, or renovation of bathroom facilities, R.C. 3702.51(T)(9), or construction of laundry facilities, waste disposal facilities, dietary department projects, heating and air conditioning projects, administrative offices, and portions of medical office buildings used exclusively for physician services. R.C. 3702.51(T)(10). Appellants, however, contend the costs may be excluded only if they relate to an existing facility. CPA Cummins testified that he has never seen or prepared an application that excluded costs for kitchen space, bathroom facilities, and laundry facilities. Contrary to appellants' contentions, ODH consultant Kenney testified that R.C. 3702.51 provides for non-reviewable costs that may be excluded, whether the costs are for new construction or for renovations to an existing facility. Reppy testified he spoke with Kenney regarding the non-reviewability of the space at issue.
 {¶ 45} The hearing examiner and director found that non-reviewable activities applied to existing facilities as well as new construction. The hearing examiner noted no express language within R.C. 3702.51(T)(9) or (10) limits the particular non-reviewable activities to existing facilities. The director similarly determined the statute excludes the costs "irrespective of whether the project is for an existing or new long-term care facility." The director further concluded that construction of "dietary department projects" includes costs associated with construction of kitchen space, and such costs therefore may be excluded from the total projected costs.
 {¶ 46} As noted, we "must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." Mazal Health Care, Ltd., at 685. Here, the statutory language does not differentiate between existing facilities and new facilities in addressing non-reviewable costs. Because the director's conclusion is not at odds with the statute itself, Manor Care properly could exclude said costs from its total project costs. As a result, the projected cost of the project did not exceed $10 million, and Manor Care was not required to have an independent accountant prepare or review a full scope financial feasibility study.
 {¶ 47} Appellants further maintain Manor Care admittedly failed to submit any type of full scope financial feasibility study as the CON application form requires. Appellants thus contend Manor Care failed to provide sufficient information under Ohio Adm. Code 3701-12-20(A). ODH requested a financial feasibility study from Manor Care in a round of follow-up questions to the application. Manor Care responded by providing what was identified at the hearing as "attachment D." ODH consultant Michael Marchetto testified attachment D is not a full scope feasibility study, even under ODH's liberal approach. Marchetto's report nonetheless recommended approval of Manor Care's CON application, even though in the past he has recommended denial of an application based on insufficient information.
 {¶ 48} CPA Cummins testified that the study Manor Care submitted did not contain prospective financial information and would not qualify under the guide issued by the American Institute of Certified Public Accountants ("AICPA"). Cummins further stated that, whenever he prepares a CON application, the application is presented in a Medicaid cost report format. Godla admitted that what Manor Care submitted was a market feasibility study and not a full scope financial feasibility study, but Kenney testified that financial feasibility is not determined based on the study alone. According to Kenney, whether a project is financially feasible depends on the information presented in the application as well as the requested study. Kenney further testified that an applicant is not required to comply with AICPA standards.
 {¶ 49} Here, testimony and evidence before the hearing examiner and director indicated the project was financially feasible: the projections were reasonable, certain costs were properly excluded, and the beds were needed in the area. Although attachment D was not a full scope financial feasibility study, the hearing examiner and director determined it provided sufficient information to determine the application. The hearing examiner and director also concluded that Manor Care need not comply with AICPA standards: "nor does the application demand that its information be presented in Medicaid cost report format." (Report and Recommendation, at 150, Conclusions of Law, at 23.) Given the information provided to him, the director had reliable, probative and substantial evidence to support his finding that Manor Care's project is overall financially feasible.
 {¶ 50} Appellant Legacy further claims the project will adversely affect other providers in the service area. Ohio Adm. Code 3701-12-20(F) provides that the director shall consider the impact of the project on all other providers of similar services, including the impact on their utilization, market share and financial status. Here, the hearing examiner found that Manor Care provided sufficient evidence on the issue of impact and noted some impact will result from the new facility: "The competition presented by the proposed project will impact existing providers. The examiner does not find that these impacts support a refusal of the application." (Report and Recommendation, at 125.) The director agreed and found Ohio Adm. Code 3701-12-20(F) was an insufficient basis to deny the CON.
 {¶ 51} Any new facility will initially impact existing providers to some extent. If some impact is sufficient to deny a CON, then few, if any, facilities ever would be approved. The hearing examiner and director recognized some impact, particularly in the short term, but found it insufficient to deny the CON. Because the project is needed in the area, as demonstrated by the submitted information in not only Manor Care's application, but also Legacy's two CON applications, we cannot say the director's conclusion regarding the new facility's impact is unsupported by the evidence. Accordingly, Legacy's argument is unpersuasive.
 {¶ 52} Appellants also assert the project will exacerbate an existing shortage of nursing staff. They further maintain Manor Care accounted for the required minimum nursing positions, but did not account for nursing administrators. Ohio Adm. Code 37011-2-20(K) provides that the director shall consider both the impact of the project on existing staffing levels and the availability of personnel resources to meet the applicant's projected requirements.
 {¶ 53} The hearing examiner found a tight market for registered nurses and licensed practical nurses in the PSA and SSA. The hearing examiner also found, however, that Manor Care presented officials and employees of Manor Care who, based on prior experience and knowledge of Manor Care's history of operating facilities, demonstrated that Manor Care's personnel resources will be sufficient to meet the applicant's requirements. The director found Ohio Adm. Code 3701-12-20(K) was an insufficient basis to deny the application.
 {¶ 54} As Manor Care notes, nursing homes everywhere are faced with the challenge of finding and retaining quality staff. If tight staffing were sufficient to deny a CON application, they apparently all would be denied. Carolyn Hecmanczuk, regional human resources manager, oversees nine Manor Care facilities; Parma is included in her region. Hecmanczuk testified Manor Care facilities have over 30 years of experience opening new facilities and recruiting staff, which may include transfers from other Manor Care facilities. According to Hecmanczuk, Manor Care intends to recruit staff by partnering with Job Corps for licensed practical nurses ("LPNs") and partnering in the operation of an LPN school. Manor Care further intends to post jobs at local area nursing schools and to sponsor special open houses for potential staff. Manor Care also provides staff with a comprehensive benefits package, competitive salaries, tuition assistance, and various scholarships for ongoing education and training. Reliable, probative and substantial evidence thus supports the hearing examiner's and director's findings that Manor Care will be able to meet its staffing needs for the proposed project.
 {¶ 55} Lastly, appellants maintain the proposed project will not meet the health-related needs of a medically underserved population. Ohio Adm. Code 3701-12-20(I) requires the director to consider the effectiveness of the project in meeting the health-related needs of medically underserved groups such as low-income individuals, handicapped individuals and minorities. The director is not to approve an application unless the relocation of the existing beds will not impair "the access of the population served or proposed to be served by the existing facility or the existing or approved beds to quality long-term care, particularly in the case of medically underserved populations, including consideration of: (1) geographic access; and (2) availability of Medicaid-certified long-term care beds." Ohio Adm. Code 3701-12-23.2(F).
 {¶ 56} The evidence demonstrated the beds were being relocated from an area, although largely a minority population, with high bed to population ratios. Conley testified that the area in which Forest Hills was located was "very over-bedded," and many of the facilities operated with low occupancy rates. Indeed, Forest Hills' average census at the end of 2002 was 55; its capacity was 200. The Schroer Group, owner of Forest Hills, consulted with the city of Cleveland on what to do with Forest Hills, and both agreed that the beds should be relocated. Accordingly, the director's finding that sufficient beds remained to serve the clientele of the existing facility is supported by reliable, probative and substantial evidence.
 {¶ 57} Because none of appellants' arguments have merit, their first and second assignments of error are overruled. Tandem's third assignment of error similarly is overruled. The decision of the director of ODH is supported by reliable, probative and substantial evidence, and is in accordance with law. Therefore, the director's decision to grant Manor Care's CON is affirmed.
Judgment affirmed.
Klatt and Sadler, JJ., concur.