[Cite as *In re Progressive Macedonia Real Estate, L.L.C.*, 2017-Ohio-8374.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| Progressive Macedonia Real Estate, LLC, et al. | : | No. 16AP-71 |
| | | (ODH File No. 9078-01-14A) |
| | : | |
| (Northfield Village Retirement Community, Ltd., et al. | : | (REGULAR CALENDAR) |
| | : | |
| Appellants). | : | |

### D E C I S I O N

### Rendered on October 31, 2017

**On brief:** *Rolf Goffman Martin Lang, LLP,* and *Ira S. Goffman*, for appellee. **Argued:** *Ira S. Goffman.*

**On brief:** *Taft Stettinius & Hollister, LLP, Patrick J. Krebs*, and *Jennifer B. Orr*, for appellants. **Argued:** *Patrick J. Krebs.*

**On brief:** *Michael DeWine,* Attorney General, *James T. Wakley*, and *Deborah A. Enck*, for Ohio Department of Health. **Argued:** *Deborah A. Enck.*

APPEAL from the Ohio Department of Health

BRUNNER, J.

{¶ 1} Appellants, Northfield Village Retirement Community, Ltd. and Northfield Village Realty I, Ltd. (collectively "Northfield Village"), pursuant to R.C. 3702.60, appeal from the January 6, 2016 adjudication order of the director of the Ohio Department of Health ("director" or "ODH" as appropriate) which granted appellee Progressive Macedonia Real Estate, LLC's ("Progressive") certificate of need ("CON") application for the development of a new 98-bed nursing home in Macedonia, Ohio. Because the order is supported by reliable, probative, and substantial evidence and is in accordance with law, we affirm the order.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 2, 2014, Progressive filed a CON application with ODH to develop a new 98-bed long-term facility in Macedonia, Summit County, Ohio. Progressive's proposal was to relocate 98 long-term beds from University Park Nursing & Rehabilitation Center ("University Park") in Akron, Summit County, citing University Park to be "a very old, three-story inter [sic] city building that was originally constructed in the 1950s to the standards and codes of a different time to serve a different population than is now available in the area of the building and the healthcare marketplace." (Joint Ex. 1 at 29.) The parties stipulated that the physical condition of University Park is poor and it needs to be replaced.

{¶ 3} On September 25, 2014, ODH directed a first set of questions to Progressive seeking additional information. Progressive responded on November 3, 2014. On November 26, 2014, ODH directed a second set of questions, which Progressive answered on January 16, 2015. On February 4, 2015, ODH declared the CON application complete. On April 1, 2015, the ODH director issued a decision approving the CON application.

{¶ 4} On April 10, 2015, Northfield Village Realty I, Ltd., a limited liability real estate company and Northfield Village Retirement Community, Ltd., an existing healthcare facility approximately two and one-half miles from the proposed Macedonia project, requested an administrative hearing to contest the approval of the Progressive CON application. Northfield Village argued that the approval of Progressive's CON application was not in accordance with guidelines in R.C. Chapter 3702 and contravenes the administrative rules in Ohio Adm.Code 3701-12.

{¶ 5} The matter was referred to an ODH hearing examiner. After a hearing and post-hearing briefs, the hearing examiner prepared a report and recommendation recommending approval of the CON application. Northfield Village filed objections. On January 6, 2016, the director issued an adjudication order adopting the hearing examiner's recommendation and specifically his findings of fact 1-21 and conclusions of law 1-12.

## II. ASSIGNMENTS OF ERROR

{¶ 6} Northfield Village filed a timely notice of appeal and has set forth the following assignments of error for our review:

> [1.] The Adjudication Order is not in accordance with the law and should be reversed because the CON is void pursuant to R.C. 3702.523(A).

> [2.] The Adjudication Order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law because Appellee lacks the legal authority to relocate the beds to the Project.
>
> [3.] The Adjudication Order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law because Appellee did not include the full cost of its Project in its CON application.
>
> [4.] The Adjudication Order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law because the Director disregarded evidence of the adverse impact the Project will have on Appellants.
>
> [5.] The Adjudication Order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law because there is no need for Appellee's Project in Macedonia.

## III. STANDARD OF REVIEW

{¶ 7} Pursuant to R.C. 3702.52(C)(1), if a project proposed in a CON application "meets all of the applicable certificate of need criteria for approval under sections 3702.51 to 3702.62 of the Revised Code * * * the director shall grant a certificate of need for all or part of the project that is the subject of the application." A person affected by the director's ruling on a CON application "may appeal the director's ruling in the adjudication hearing to the tenth district court of appeals." R.C. 3702.60(A).

{¶ 8} In an appeal to this Court of an adjudication order for a CON, "[t]he court shall affirm the director's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (F)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it must reverse, vacate, or modify the order." R.C. 3702.60(F)(3). The "[a]nalysis of whether the evidence supports the director's decision is essentially a question of the absence or presence of the requisite quantum of evidence." *In re Wedgewood Health Care Realty, LLC*, 176 Ohio App.3d 554, 2008-Ohio-2950, ¶ 7 (10th Dist.).

{¶ 9} Reliable evidence is "dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true." *Our*

*Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). Probative evidence "is evidence that tends to prove the issue in question; it must be relevant in determining that issue." *Id.* Substantial evidence "is evidence with some weight; it must have importance and value." *Id.*

{¶ 10} "Although this court may engage in a very limited weighing of the evidence upon an appeal of this nature, we may not substitute our judgment for that of the Department as to the credibility of witnesses and the weight to be given the testimony." *In re Knolls of Oxford*, 10th Dist. No. 02AP-514, 2003-Ohio-270, ¶ 13. A reviewing court must give due deference to the administrative resolution of evidentiary conflicts. *In re Manor Care*, 10th Dist. No. 05AP-398, 2005-Ohio-5703, ¶ 9.

## IV. DISCUSSION

### A. First Assignment of Error - R.C. 3702.523(A)

{¶ 11} Northfield Village asserts in its first assignment of error that the director's adjudication order is not in accordance with law because Progressive has taken actions that rendered the approved CON void pursuant to R.C. 3702.523(A). Northfield Village argues that Progressive entered into a real estate brokerage agreement that contemplated the transfer of all of Progressive's nursing home properties, including the Macedonia project at issue (The Avenue at Macedonia) and that such action renders the CON void under R.C. 3702.523(A).

{¶ 12} R.C. 3702.523(A) provides as follows:

> Except as provided in division (B) of this section, a certificate of need is not transferable prior to the completion of the reviewable activity for which it was granted. If any person holding a certificate of need transfers the certificate of need to another person before the reviewable activity is completed, or enters into an agreement that contemplates the transfer of the certificate of need on the completion of the reviewable activity, the certificate of need is void. If the controlling interest in an entity that holds a certificate of need is transferred prior to the completion of the reviewable activity, the certificate of need is void.

Relying on this statute, Northfield Village argues that the CON is void because Progressive entered into a brokerage agreement that contemplated the transfer of the CON before the reviewable activity was completed.

{¶ 13} Northfield Village's exhibit D is the Offering Summary Portfolio produced by the broker. The Offering Overview provided that Blueprint Healthcare Real Estate Advisors ("Blueprint") were presenting the skilled nursing facilities and four facilities under development. (Northfield Village's Ex. D at 5.)

{¶ 14} Specifically listed as part of the Offering Summary Portfolio is the Avenue at Macedonia as one of the facilities currently under development. (Northfield Village's Ex. D at 5.) However, Eitan Flank, the CEO of Progressive Quality Care, the management company for Progressive, testified that he entered into a 90-day real estate brokerage agreement where the broker has the ability to earn a commission if Progressive were to sell during that 90 days. Flank testified that his agreement with Blueprint did not include the Avenue at Macedonia or any of the new projects (Progressive currently had four projects in development). He specifically stated that "I don't have any offers to sell, I haven't accepted anything, I haven't agreed to sell anything with Blueprint." (July 14, 2015 Tr. Vol. II at 82.) He testified that what he "was flirting with was perhaps the divest of the old pieces, but show the new things just as a carrot." (Tr. Vol. II at 83.) Flank stated that Progressive did not authorize Blueprint to send the brochure to people and the evening before he testified, Progressive told Blueprint to stop distributing the brochure. Despite the inferences from the brochure, Flank stated that his family does not intend to get out of the nursing home business. Finally, Flank stated that the Avenue at Macedonia was not included in the listing agreement with Blueprint and he does not even own the land, so he was not selling it.

{¶ 15} Flank's testimony is that the Avenue at Macedonia was not included in the broker agreement, and he had no intention of selling or contemplated selling the Macedonia CON. His testimony is that the agreement was not one subject to R.C. 3702.523(A) but, rather, was a test to determine the market for the properties.

{¶ 16} We may not substitute our judgment for that of the department as to the credibility of witnesses and the weight to be given the testimony but, rather, give due deference to the administrative resolution of evidentiary conflicts. *In re Knolls of Oxford* at ¶ 13; *In re Manor Care* at ¶ 9. The director determined that Flank's testimony constitutes evidence that Progressive did not take actions that renders the CON void under R.C. 3702.523(A). We find this to be reliable, probative, and substantial evidence relied on by

ODH in granting the certificate of need.  We therefore overrule Northfield Village's first assignment of error.

## B.  Second Assignment of Error – Authority to Relocate Beds

{¶ 17}  Northfield Village assigns a second error, arguing Progressive lacks the legal authority to relocate the subject beds.  Northfield Village argues that because Home Savings and Loan Company of Youngtown, Ohio ("Home Savings and Loan") holds a security interest in the beds sought to be relocated by Progressive's CON application, Progressive is unable by operation of law to relocate the beds.

{¶ 18}  Ohio Admin.Code 3701-12-23.2(B)(2) provides that "[t]he applicant or the person proposed to own or operate the facility must have entered into a contract to obtain the legal authority to operate the beds that are subject to the certificate of need." Progressive submitted with its CON application a copy of the contract to purchase the 98 nursing-home beds.

{¶ 19}  Flank testified that even though Home Savings and Loan holds a lien on the beds, when Progressive reduces the debt to Home Savings to $1,650,000, Home Savings and Loan will release the lien.  Northfield Village provided the testimony of an expert on CON process, Russell Corwin, who confirmed that Progressive could not relocate the beds to the new facility until the lienholder released the lien.  Northfield Village contends that Flank's testimony does not constitute credible evidence.

{¶ 20}  The hearing examiner determined that the mortgage lien on the long-term care beds did not provide a basis for recommending withdrawal of the CON approval. Progressive's CON application contains evidence of the security interest, the identity of the party holding the security interest, the monetary value of the security interest, and the requirement to obtain release of the lien.  The responses to the second request for additional information disclosed that the Huntington National Bank was willing to provide a promissory note at closing of the Bed Purchase Agreement for $2,940,000.  (Joint Ex. 1 at 201.)  The hearing examiner found that the record contained sufficient information about bank financing, equity contributions, and potential financing sources among the related and non-related entities to avert a recommendation of withdrawal of the approval of the CON on these grounds.  After a review of the transcript, the application, and Progressive's answers to the ODH supplemental questions, we agree.  Accordingly, ODH's decision was

based on reliable, probative, and substantial evidence and Northfield Village's second assignment of error is overruled.

## C. Third Assignment of Error – Projected Costs

{¶ 21} Northfield Village assigns a third error in ODH's decision, arguing that the adjudication order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law because Progressive did not include the full cost of its project in its CON application. Northfield Village argues that Progressive vastly understated the site development expenses for the project and did not include all the site work, utility and connection fees, storm water management, and possible environmental mitigation costs.

{¶ 22} Both Ohio Adm.Code 3701-12-23.2(G) and 3701-12-20(B)(1) require a CON applicant to document the costs of the project. Flank testified that the property does not contain any wetlands so no money for environmental mitigation costs needed to be projected. Progressive indicated in its CON application that it did not intend to build the building on the flood plain because it had negotiated the purchase of another property next to it and moved the proposed site out of the flood plain onto higher ground before applying for the CON. Flank based the proposed tapping fee on prior experience and possible negotiations with the city. Flank also testified that the total estimate for the project is $14,800,000 and the CON regulations provide for ten percent overage or for an additional $1,480,000 without having to file for a cost overrun. Flank testified, however, that Progressive's estimate was accurate and that he could build the project for the proposed cost.

{¶ 23} The hearing examiner did not find the projected costs to be so inaccurate or misleading as to require a reversal of the CON approval. Flank's testimony provided reliable, probative, and substantial evidence of the projected costs and supported the requirement that Progressive include the full cost of its project in its CON application. The hearing examiner apparently did not find Northfield Village's estimates of the full cost of the project more credible than Progressive's projected costs. Following our previous holding of *In re Knolls of Oxford*, we will not disturb ODH's factual findings, and Northfield Village's third assignment of error is overruled.

## D. Fourth Assignment of Error-Adverse Impact

{¶ 24} Northfield Village assigns a fourth error to ODH's adjudication order, arguing it is not supported by reliable, probative, and substantial evidence and not in accordance

with the law, because the director disregarded evidence of the adverse impact the Macedonia Project will have on Northfield Village, another provider in the service area. Ohio Adm.Code 3701-12-20(F) provides that the director shall consider the impact of the project on all other providers of similar services, including the impact on their utilization, market share, and financial status.

{¶ 25} As this Court recognized in *Manor Care* at ¶ 51, "[a]ny new facility will initially impact existing providers to some extent. If some impact is sufficient to deny a CON, then few, if any, facilities ever would be approved." *See also In re Altercare of Stow Rehab. Ctr.*, 10th Dist. No. 12AP-29, 2012-Ohio-4243, ¶ 22. Some negative impact, such as retaining staff at Northfield Village, does not require a denial of the CON application. In *Manor Care* at ¶ 54, we stated "nursing homes everywhere are faced with the challenge of finding and retaining quality staff. If tight staffing were sufficient to deny a CON application, they apparently all would be denied."

{¶ 26} Northfield Village relies on the testimony of Michael Francus, the managing member of Northfield Village Realty I, Ltd., the property and bed-right owner, who testified that the area was experiencing a staffing shortage because there were already eight facilities within three to five miles of Northfield Village. In his testimony, Francus opined that the area did not need another facility and that a new facility would exacerbate the staffing shortage.

{¶ 27} Flank testified that he did not expect the project to have a large impact on other providers' utilization, market share, or financial status for several reasons.

> First of all, in general when a new facility opens, * * * there's a small effect only during the -- when the first building opens until it fills up, there's a small decline in people around you, but then they always bounce back up. * * *
>
> Secondly, * * * [there are] no skilled nursing facilit[ies] in Macedonia at all. [A]s I said before, the projection -- the projected growth of 65-plus in Macedonia between the years 2010 and 2019 is expected to grow by 31.8 percent.
>
> On top of that, * * * the Baby Boomers are coming into the system pretty much now. There's 3 million Baby Boomers every year.

(Tr. Vol. II at 76.)

{¶ 28} In regard to the testimony of Francus and Flank, the hearing examiner acknowledged that the Macedonia project "will provide increased competition to existing service providers operating in the primary and secondary service areas proposed to be served by the Progressive Macedonia facility" but that "the competition expected * * * is inherent to a new facility." (Nov. 10, 2015 Report and Recommendation at 70, Findings of Fact Nos. 13-14.) The hearing examiner did not find the competition "to support a recommendation of the withdrawal of approval of the" CON. *Id.* at 70, Findings of Fact No. 15. The hearing examiner, after hearing conflicting evidence about competition and staffing levels concerning Progressive's CON application, determined that "[s]ecuring adequate staff to operate long-term facilities in the service area * * * has been a long-standing and continuing challenge among existing long-term care facilities operating in the proposed service area" but the hearing examiner did not find the expected competition for adequate staffing "to be sufficiently onerous" as to recommend the withdrawal of the approval of the CON. (Report and Recommendation at 70, Findings of Fact Nos. 16-17.)

{¶ 29} This Court defers to the agency's resolution of evidentiary conflicts. *In re Green Village Skilled Nursing Ctr.*, 10th Dist. No. 12AP-91, 2012-Ohio-3769, ¶ 24. Accordingly, we find that reliable, probative, and substantial evidence supports the director's conclusion that the new Macedonia project would not cause such an onerous impact as to warrant the denial of the application and that conclusion is not contrary to law. Northfield Village's fourth assignment of error is overruled.

### E. Fifth Assignment of Error-No Need for Project

{¶ 30} Northfield Village assigns a fifth error in the adjudication order, such that it is not supported by reliable, probative, and substantial evidence and is not in accordance with law, arguing there is no need for Progressive's new project in Macedonia. Northfield Village argues that the only evidence presented at the hearing demonstrated there are many new facilities in the area.

{¶ 31} Ohio Adm.Code 3701-12-20(D) requires that the director "consider the need that the population served or proposed to be served has for the services to be provided upon implementation of the project. In assessing the need for a project, the director shall examine: * * * (2) Travel times and the accessibility of the project site and of the sites of similar services to the proposed service area population." Northfield Village argues that, given the "plethora" of available, good quality facilities in the service area, Progressive

cannot provide evidentiary support that the project is needed.  (Sept. 1, 2015 Northfield Village Post-Hearing Brief at 17.)

{¶ 32}  The parties stipulated that University Park should be replaced. Flank testified at the hearing that there are no skilled nursing homes in Macedonia, and the aged population is growing.  (Tr. Vol. II at 76, "as I said before, the projection -- the projected growth of [age] 65-plus in Macedonia between the years 2010 and 2019 is expected to grow by 31.8 percent.  On top of that, * * * the Baby Boomers are coming into the system pretty much now.  There's 3 million Baby Boomers every year.")

{¶ 33}  Accordingly, we find that reliable, probative, and substantial evidence supports the director's adjudication that the new Macedonia project is needed, and this conclusion is not contrary to law.  Northfield Village's fifth assignment of error is overruled.

## V.  CONCLUSION

{¶ 34}  Having overruled Northfield Village's five assignments of error, we affirm the order of the director of Ohio Department of Health.

*Order affirmed.*

BROWN and KLATT, JJ., concur.

————————————