[Cite as *In re Avon Skilled Nursing & Rehab.*, 2019-Ohio-3790.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | No. 18AP-863 |
| | | (O.D.H. File No. 9106-01-17A) |
| Avon Skilled Nursing and Rehabilitation. | : | |
| | | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on September 19, 2019

**On brief:** *Dave Yost*, Attorney General, and *Henry G. Appel*, for appellee Ohio Department of Health. **Argued:** *Henry G. Appel.*

**On brief:** *Webster & Associates Co., LPA,* and *Geoffrey E. Webster*, for appellee/cross-appellant Avon Realty Holding, LLC. **Argued:** *Geoffrey E. Webster.*

**On brief:** *Rolf Goffman Martin Lang, LLP, Ira S. Goffman,* and *Joseph F. Petros*, for appellants/cross-appellees Main Street Care Center Ltd., Avon Healthcare Center, Inc., and R & J Investment Company, Inc. **Argued:** *Ira S. Goffman.*

APPEAL from the Ohio Department of Health

LUPER SCHUSTER, J.

{¶ 1} Appellants, Main Street Care Center, Ltd., Avon Healthcare Center, Inc., and R & J Investment Company, Inc., appeal, and cross-appellant, Avon Realty Holding, LLC ("Avon Realty Holding"), cross-appeals from the October 19, 2018 adjudication order of appellee Director of the Ohio Department of Health ("ODH") granting Avon Realty Holding's certificate of need ("CON") application. For the following reasons, we affirm.

**I. Factual and Procedural Background**

{¶ 2} On October 30, 2015, Avon SNF Realty, LTD, filed a CON application with ODH to construct and operate a new long-term care facility, to be known as Avon Skilled Nursing and Rehabilitation, in Avon, Ohio, in Lorain County. The applicant proposed the

relocation of 82 long-term care beds from Golden Acres Lorain County Home ("Golden Acres"), a facility formerly operated in Lorain County by the Lorain County Board of Commissioners (a "county nursing home" as defined in R.C. 5155.31)[1], to a newly constructed nursing facility in Lorain County on the Avon Health Campus.  Golden Acres last provided long-term care services to a resident in October 2015.  The director denied this CON application in May 2016, reasoning that he was without authority to approve the application because it proposed the relocation of long-term care beds that were no longer located in a county nursing home and therefore were no longer existing beds.

{¶ 3}    On July 13, 2016, the 131st General Assembly enacted Amended Substitute House Bill 483 ("Am.Sub.H.B. No. 483"), which became effective on October 12, 2016.  The application and constitutionality of this legislation is at issue in this case.

{¶ 4}    On January 9, 2017, the County Commissioners Board of Lorain County and Avon Realty Holding entered into an agreement for the transfer and sale of the right to operate Golden Acres' 82 nursing home beds to Avon Realty Holding.  The next day, Avon Realty Holding[2] filed a CON application with ODH to construct and operate the nursing home facility to be known as Avon Skilled Nursing and Rehabilitation, in Avon, Ohio, in Lorain County.  Like Avon SNF Realty, LTD's October 30, 2015 CON application, Avon Realty Holding sought ODH's approval for the relocation of 82 long-term care beds from Golden Acres to a proposed new facility on the Avon Health Campus.

{¶ 5}    After Avon Realty Holding submitted its CON application, ODH requested additional information, which was provided.  On July 20, 2017, ODH declared Avon Realty Holding's CON application to be complete.  On August 31, 2017, ODH staff submitted a report to the director of ODH recommending approval of the relocation of long-term care beds from Golden Acres to the proposed long-term care facility.  On September 15, 2017, the director of ODH informed Avon Realty Holding that its CON application, involving the "[i]ntra-county relocation of 82 long-term care (LTC) beds from Golden Acres Lorain

---

[1] R.C. 5155.31 uses the terms "county home" and "county nursing home" interchangeably, without any distinction between the two terms.  *See* R.C. 3721.01 (defining "home" to include a "nursing home").  Thus, Golden Acres also may be considered a "county home."

[2] Avon Health Realty, LLC, was initially identified as the applicant, but Avon Realty Holding was later identified as the correct name of the applicant.

County Home, to a newly constructed nursing facility," had been approved. (Joint Ex. at 407.)

{¶ 6} Pursuant to R.C. 3702.60(B), appellants, which operate long-term care facilities in the service area where the long-term care services would be provided under Avon Realty Holding's CON, filed an appeal of the director's decision and requested an adjudication hearing.

{¶ 7} A hearing examiner held a four-day hearing on the matter in January and February 2018. In August 2018, the hearing examiner issued a report and recommendation recommending that the director grant Avon Realty Holding's CON application. Appellants filed objections to the report and recommendation. In October 2018, the director issued an adjudication order, adopting the hearing examiner's findings of fact, conclusions of law, and recommendation. The director accordingly granted Avon Realty Holding's CON application.

{¶ 8} Pursuant to R.C. 119.12, appellants appeal, and Avon Realty Holding cross-appeals, from the director's adjudication order.

## II. Assignments of Error

{¶ 9} Appellants assign the following errors for our review:

[1.] The director erred by refusing to apply and enforce Administrative Code Section 3701-12-23.2(E).

[2.] The director's decision to approve the applicant's CON application is in error because Section 737.10 of the Amended Substitute House Bill No. 483, upon which the director's decision relies, violates the one-subject rule under Article II, Section 15(D) of the Ohio Constitution.

[3.] The director's decision to approve the applicant's CON application is in error because Section 737.10 of the Amended Substitute House Bill No. 483, upon which the director's decision relies, violates the uniformity clause under Article II, Section 26 of the Ohio Constitution.

[4.] The director's decision to approve the applicant's CON application is not supported by reliable, probative, and substantial evidence and is not in accordance with Sections 3702.51 to 3702.62 of the Revised Code or the rules adopted under those sections.

{¶ 10} In its cross-appeal, Avon Realty Holding assigns the following errors for our review:

> [1.] Whether the hearing examiner erred by failing to issue the findings of fact and conclusion of law that Lorain County's Golden Acres Home was an open, operating facility and was an existing health care facility as defined in R.C. 3702.51(J).
>
> [2.] Whether the hearing examiner improperly granted appellants' motion to quash Avon's subpoena request for appellants' financial documentation.
>
> [3.] Whether the hearing examiner improperly used the term "special legislation" in reference to Am. Sub. H.B. 483 (131st General Assembly) thereby creating the bases for a potential appealable issue for appellants Main Street Care Center, Ltd., Atrium Retirement Centers, LLC, Avon Healthcare Center, Inc., and R & J Investment Co., Inc.

## III. Discussion

### A. Appellants' First and Fourth Assignments of Error – Application Approval

{¶ 11} We address together appellants' first and fourth assignments of error. In appellants' first assignment of error, they contend the director erred in refusing to apply Ohio Adm.Code 3701-12-23.2(E). They argue this regulation prohibited the director from granting Avon Realty Holding's January 10, 2017 CON application. Appellants' fourth assignment of error more generally asserts the director's adjudication order granting Avon Realty Holding's January 10, 2017 CON application is not supported by reliable, probative, and substantial evidence and is not in accordance with law, namely R.C. 3702.51 to 3702.62 and the administrative rules adopted thereunder. These assignments of error lack merit.

{¶ 12} Pursuant to R.C. 3702.60(B), "the [CON] applicant or another affected person may appeal to the director in accordance with Chapter 119. of the Revised Code a decision issued by the director to grant or deny a certificate of need application, and the director shall provide an adjudication hearing in accordance with that chapter." At the adjudication hearing, the appellant must prove by a preponderance of the evidence that the director's decision is not in accordance with R.C. 3702.52 through 3702.62 and the rules

adopted thereunder. *In re LTC Tallmadge, LLC*, 10th Dist. No. 18AP-282, 2019-Ohio-225, ¶ 17.

{¶ 13} The director's decision following the adjudication hearing may be appealed to the Tenth District Court of Appeals under R.C. 3702.60(B). In considering an appeal of a CON adjudication order, this court "shall affirm the director's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (F)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order." R.C. 3702.60(F)(3).

{¶ 14} Reliable evidence is "dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true." *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). Probative evidence is "evidence that tends to prove the issue in question; it must be relevant in determining the issue." *Id.* Substantial evidence is "evidence with some weight; it must have importance and value." *Id.*

{¶ 15} The "[a]nalysis of whether the evidence supports the director's decision is essentially a question of the absence or presence of the requisite quantum of evidence." *In re Wedgewood Health Care Ctr., LLC*, 176 Ohio App.3d 554, 2008-Ohio-2950, ¶ 7 (10th Dist.). "Although this court may engage in a very limited weighing of the evidence upon an appeal of this nature, we may not substitute our judgment for that of the [ODH] as to the credibility of witnesses and the weight to be given the testimony." *In re Knolls of Oxford*, 10th Dist. No. 02AP-514, 2003-Ohio-270, ¶ 13. "A reviewing court must give due deference to the administrative resolution of evidentiary conflicts." *In re Progressive Macedonia Real Estate, LLC*, 10th Dist. No. 16AP-71, 2017-Ohio-8374, ¶ 10, citing *In re Manor Care*, 10th Dist. No. 05AP-398, 2005-Ohio-5703, ¶ 9. "With respect to factual findings, it is incumbent upon appellant to demonstrate they are not supported by reliable, probative, and substantial evidence." *In re Certificate of Need Application for Parkside Villa*, 10th Dist. No. 04AP-1232, 2005-Ohio-5699, ¶ 14.

{¶ 16} " 'Courts must afford due deference to an agency's interpretation of the rules it is required to administer, but only so long as the agency's interpretation is reasonable and consistent with the plain language of the rules.' " *In Re Certificate of Need Application of*

*Countryside Health Care Ctr.*, 10th Dist. No. 14AP-411, 2014-Ohio-5861, ¶ 13, quoting *In re 4307 Care, L.L.C., Certificate of Need*, 10th Dist. No. 05AP-672, 2006-Ohio-2071, ¶ 12. " 'Deference to an agency's interpretation "may be disregarded or set aside when judicial construction makes it imperative to do so." ' " *Countryside Health Care Ctr.* at ¶ 13, quoting *4307 Care* at ¶ 12, quoting *Glassco v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 03AP-871, 2004-Ohio-2168, ¶ 11.

{¶ 17} At issue in this case is the application of the governing law pertaining to the relocation of long-term care beds from a closed county nursing home to a proposed long-term care facility. R.C. 3702.52 provides that the director "shall administer a state certificate of need program in accordance with sections 3702.51 to 3702.62 of the Revised Code and rules adopted under those sections." To facilitate the implementation of this program, R.C. 3702.57(A) empowers the director to "adopt rules establishing procedures and criteria for reviews of applications for certificates of need and issuance, denial, or withdrawal of certificates." A "certificate of need" is a "written approval granted by the director of health to an applicant to authorize conducting a reviewable activity." R.C. 3702.51(C). A CON application must be submitted on the forms and in the manner prescribed by the director. R.C. 3702.52(B)(1). If the proposed project meets all the applicable CON criteria under R.C. 3702.51 to 3702.62 and the rules adopted under those sections, the director must grant the CON for all or part of the proposed project. R.C. 3702.52(C)(1). For the purpose of R.C. 3702.51 through 3702.62, a "county nursing home" has the same meaning as in R.C. 5155.31, which defines the term to mean "a facility that is owned and operated by the county * * * and that is used for the reception and care of individuals who by reason of illness or physical or mental impairment require skilled nursing care and of individuals who require personal assistance." R.C. 3702.51(Q).

{¶ 18} R.C. 3702.592(A) provides that the director "shall accept, for review under section 3702.52 of the Revised Code, certificate of need applications for any of the following purposes if the proposed increase in beds is attributable to a replacement or relocation of existing beds from an existing long-term care facility within the same county." One of the delineated purposes is the "[a]pproval of beds in a new long-term care facility or an increase of beds in an existing long-term care facility if the beds are proposed to be licensed as nursing home beds under Chapter 3721. of the Revised Code." R.C. 3702.592(A)(1).

{¶ 19} Ohio Adm.Code 3701-12-23.2(A) provides: "In addition to review under other applicable provisions of the Administrative Code, the director shall not approve an application for a certificate of need to replace an existing long-term care facility or to relocate existing long-term care beds from one site to another unless the application meets all of the criteria prescribed by this rule." Among the criteria prescribed by this rule is the requirement that the "facility being replaced or from which beds are being relocated is a long term care facility, as defined in paragraph (P) of rule 3701-12-01 of the Administrative Code, and an existing long-term care facility, as defined in paragraph (I) of rule 3701-12-01 of the Administrative Code." Ohio Adm.Code 3701-12-23.2(E).

{¶ 20} Ohio Adm.Code 3701-12-01(P) defines "long-term care facility" to mean any of the following:

> (1)   A nursing home licensed under section 3721.02 of the Revised Code or by a political subdivision certified under section 3721.09 of the Revised Code;
>
> (2)  The portion of any facility, including a county home or a county nursing home, that is certified as a skilled nursing facility or a nursing facility under Title XVIII or XIX of the Social Security Act; or
>
> (3)  The portion of any hospital that contains beds registered under section 3701.07 of the Revised Code as skilled nursing beds or long-term care beds.

*See* R.C. 3702.51(N) (same definition for "long-term care facility" for the purpose of R.C. 3702.51 to 3702.62).

{¶ 21} Ohio Adm.Code 3701-12-01(I) defines "existing long-term care facility" to mean either of the following:

> (1)   A long-term care facility that is licensed or otherwise authorized to operate in this state in accordance with applicable law, including a county home or a county nursing home that is certified under Title XVIII or Title XIX of the Social Security Act, 49 Stat. 620 (1935), 42 U.S.C. 301, as amended (1981), that is staffed and equipped to provide long-term care services, and is actively providing long-term care services; or

(2) A long-term care facility that is licensed or otherwise authorized to operate in this state in accordance with applicable law, including a county home or a county nursing home that is certified under Title XVIII or Title XIX of the Social Security Act, 49 Stat. 620 (1935), 42 U.S.C. 301, as amended (1981), or has beds registered under section 3701.07 of the Revised Code as skilled nursing beds or long-term care beds and has provided long-term care services for at least three hundred sixty-five consecutive days within the twenty-four months immediately preceding the date a certificate of need application is filed with the director of health.

*See* R.C. 3702.51(J) (same definition for "existing long-term care facility" for the purpose of R.C. 3702.51 to 3702.62).

{¶ 22} In July 2016, the General Assembly enacted Am.Sub.H.B. No. 483, which included a temporary provision pertinent to a CON applicant requesting the construction of a new long-term care facility.[3] Uncodified section 737.10 of Am.Sub.H.B. No. 483 states as follows:

(A) As used in this section:

(1) "Existing long-term care facility" has the same meaning as in section 3702.51 of the Revised Code.

(2) "Long-term care bed" has the same meaning as in section 3702.51 of the Revised Code, except that it also means a bed that is located in a former county home or former county nursing home and was part of the county home's or county nursing home's authorized maximum certified capacity for purposes of the Medicare and Medicaid programs before the effective date of this section.

(B) The Director of Health shall accept for review under section 3702.52 of the Revised Code a certificate of need application to which all of the following apply:

(1) The application is for the establishment, development, or construction of a new long-term care facility.

---

[3] The parties disagree as to the basis for the director's denial of the first CON application seeking to construct the long-term care facility to be known as Avon Skilled Nursing and Rehabilitation. They analyze whether Am.Sub.H.B. No. 483 remedied the basis for that denial. This analysis is unnecessary and inconsequential. The issue here is whether the director erred in granting Avon Realty Holding's January 10, 2017 CON application, not whether Am.Sub.H.B. No. 483 addressed any deficiency in Avon SNF Realty LTD's October 30, 2015 CON application.

(2) The new long-term care facility's long-term care beds are to be long-term care beds that are relocated from a former county home or former county nursing home to which both of the following apply:

(a) The former county home or former county nursing home was an existing long-term care facility on or before October 1, 2015.

(b) The operator of the former county home or former county nursing home, in accordance with section 5155.38 of the Revised Code, certified to the Director the number of long-term care beds that were in operation in the home on July 1, 1993.

(3) The application is submitted to the Director during the period beginning October 1, 2015, and ending ninety days after the effective date of this section.

(C) In reviewing a certificate of need application authorized by this section, the Director shall not deny the application on the grounds that the former county home or former county nursing home from which the long-term care beds are being relocated has closed and ended its participation in the Medicare and Medicaid programs.

{¶ 23} According to appellants, Avon Realty Holding's January 10, 2017 CON application failed to meet all of the requirements of Ohio Adm.Code 3701-12-23.2(E), and, therefore, pursuant to Ohio Adm.Code 3701-12-23.2(A), the director was not permitted to approve the application. We are unpersuaded.

{¶ 24} As set forth above, Ohio Adm.Code 3701-12-23.2(E) requires that a facility being replaced or from which beds are being relocated must be a "long-term care facility," as defined in Ohio Adm.Code 3701-12-01(P), and an "existing long-term care facility," as defined in Ohio Adm.Code 3701-12-01(I). Appellants concede that Golden Acres was a "long-term care facility" as defined in Ohio Adm.Code 3701-12-01(P). However, they contend that, at the time Avon Realty Holding filed its CON application, Golden Acres was not an "existing long-term care facility," as defined in Ohio Adm.Code 3701-12-01(I), because it was not actively providing long-term care services and had not provided long-term care services for 365 consecutive days over the 24 months immediately preceding the filing of the application.

{¶ 25} The director agreed with appellants' assertion that, at the time Avon Realty Holding filed its CON application on January 10, 2017, Golden Acres was closed and had not provided long-term care services for 365 consecutive days over the 24 months immediately preceding the filing of the application. And the evidence supports this finding. However, this does not end the analysis.

{¶ 26} As to section 737.10(B)'s applicability, the director found that Avon Realty Holding's January 10, 2017 CON application proposes the establishment, development, or construction of a new long-term care facility; the new long-term care facility's long-term care beds are to be long-term care beds that are relocated from a former county home or former county nursing home that was an existing long-term care facility on or before October 1, 2015; and the operator of that home certified to the director, in accordance with R.C. 5155.38, the number of long-term care beds that were in operation in the home on July 1, 1993. Further, the director found that Avon Realty Holding's January 10, 2017 CON application was submitted within the 90-day window set forth in section 737.10(B)(3) of Am.Sub.H.B. No. 483. Therefore, the director found that all of the requirements of section 737.10(B) were established, and appellants do not challenge this finding.

{¶ 27} Appellants essentially argue that even though the criteria of section 737.10(B) was met, this circumstance did not eliminate the requirement that Golden Acres constitute an "existing long-term care facility," as set forth in Ohio Adm.Code 3701-12-23.2(E). We disagree. Because Avon Realty Holding's CON application met all the elements of section 737.10(B), the director was required to accept the application for review, despite Golden Acres not qualifying as an "existing long-term care facility" at the time of Avon Realty Holding's CON application. Unlike Ohio Adm.Code 3701-12-23.2(E), section 737.10(B) does not mandate any limitation on the length of time between the closure of a county home or county nursing home and the proposed relocation of beds from the closed facility. And to the extent there is any uncertainty as to this issue, section 737.10(C) expressly precludes the director from denying such an application on the basis that a formerly open and operating county home or county nursing home has closed. Thus, Ohio Adm.Code 3701-12-23.2(E)'s limitation on when an applicant may seek to relocate long-term care beds from a closed county home or county nursing home was effectively eliminated by section 737.10 for CON applications meeting the requirements of that law.

{¶ 28} Appellants assert that this conclusion that section 737.10 altered the circumstances under which a CON applicant may request the relocation of beds from a closed county nursing home is inconsistent with section 737.10(A)(1), which states that "[a]s used in this section[,] * * * '[e]xisting long-term care facility' has the same meaning as in section 3702.51 of the Revised Code." We disagree. The only reference to an "existing long-term care facility" in section 737.10, other than in section 737.10(A)(1), is the provision referring to a county facility that "was an existing long-term care facility on or before October 1, 2015." Thus, to qualify under section 737.10, the closed facility (which may or may not be an "existing long-term care facility" at the time of filing the CON application, depending on whether long-term care services had been provided for 365 consecutive days over the 24 months immediately preceding the filing) must have been an existing long-term care facility on or before October 1, 2015. Our analysis does not change the meaning of "existing long-term care facility."

{¶ 29} Because appellants' first assignment of error lacks merit, we overrule it.

{¶ 30} In support of its fourth assignment of error, appellants argue that the director should have denied Avon Realty Holding's CON application because of its flaws and deficiencies. In particular, appellants contend Avon Realty Holding failed to demonstrate control over one of the two parcels of land for the proposed facility, failed to document the necessary working capital or financial feasibility in financial statements, and failed to provide the required primary and secondary service area information by zip code. Essentially, appellants argue that based on these flaws and deficiencies the adjudication order was not supported by reliable, probative, and substantial evidence and is not in accordance with law. We are unpersuaded.

{¶ 31} Ohio Adm.Code 3701-12-20(A) provides:

> An applicant for a certificate of need shall provide sufficient information to enable the director to perform a thorough review of the application in relation to each relevant criterion established by this chapter of the Administrative Code by completely responding to each applicable portion of the application form and attachments prescribed by the director and by attaching the necessary supporting documentation.

Pursuant to this rule, "the director of ODH is not required to disapprove a CON application with omissions, mistakes, or inconsistencies where the director has sufficient information to perform a thorough review of the application." *Tallmadge*, *supra*, at ¶ 24.

{¶ 32} Here, the director adopted the hearing examiner's finding of fact that Avon Realty Holding's January 10, 2017 CON application "contained omissions, errors, and inconsistencies, but the information provided by the applicant through its certificate of need application nonetheless provided the Ohio Department of Health and the Ohio Director of Health with sufficient information to provide a thorough, reliable, and required review of the certificate of need application under the laws and rules of Ohio's certificate of need program." (Hearing Examiner Report & Recommendation at 98.) Thus, the director did not view those omissions, errors, and inconsistencies as significant enough to preclude its thorough review of the CON application.

{¶ 33} We separately address the deficiencies appellants contend required the denial of Avon Realty Holding's CON application. Appellants first argue Avon Realty Holding did not demonstrate control over one of the two parcels of land where the project is proposed to be developed.

{¶ 34} Ohio Adm.Code 3701-12-08(D) states that "[e]ach applicant shall submit an original of the application form and necessary attachments in a manner prescribed by the director and shall include, but not be limited to, the following: * * * (4) Identification of a specific site for the project designated by a street address or, if there is no street address, a plot or parcel number."

{¶ 35} In its CON application, Avon Realty Holding indicated that the proposed 82-bed facility would be located "on a parcel of land that is a portion of the new Avon Health Campus in Avon, Ohio, on Health Campus Boulevard (or an artery thereof), which is near Nagle Road by I-90. No address is yet assigned to this site which is the portion of permanent parcel numbers 04-00-028-101-114 [parcel 114] and 04-00-028-101-117 [parcel 117], as identified on the attachment to page one of the application form pages." (Joint Ex. at 24.) The application continues, "It is possible the precise location may be adjusted based upon soil tests, and other topography requirements (such as water retention pond) and those tests will not be done unless and until this Application is granted; however the site

identified is as close as possible to the desired location agreed to by the Seller and Applicant and will not materially change." (Joint Ex. at 24-25.)

{¶ 36} Before the ODH hearing examiner, Avon Realty Holding's owner, Michael Francus, testified that his company is in contract to purchase parcels 114 and 117, but the precise location of the facility on those properties is subject to a "wetlands problem" and thus had not been finalized. (Tr. Vol. V at 626.) Avon Realty Holding submitted copies of two purchase and sale agreements in connection with its CON application. One agreement pertains to parcel 114, and the other purportedly pertains to parcel 117. As to the latter agreement, appellants argue this agreement does not support a finding that Avon Realty Holding has demonstrated control over parcel 117, in part because it does not include any address, plot, or parcel number identifying the property to which the agreement relates. This agreement states that the seller agreed to sell to Avon Realty Holding approximately 5.28 acres of a "certain parcel of land located in Lorain County, Ohio, containing 38.377 acres * * * located near the intersection of Interstate 90 and Nagel Road in the Avon Place/Avon Health Campus development." (Joint Ex. at 388.) The submitted tax map for the Interstate 90 and Nagel Road area contained no 38.377 acre parcel. Thus, the agreement did not identify the precise location of the property ultimately to be transferred, and there was inconsistency between the acreage identified in the agreement and that reflected on the tax map. However, while there was some uncertainty as to the precise location of the proposed facility, ODH employee Greg Glass testified that such uncertainty is not uncommon because the location of a newly constructed facility may not be finalized until after the application is approved considering construction realities. Further, Francus' testimony clarified that, while no 38-acre parcel is shown on the tax map, the 38-acre property discussed in the agreement, purported to relate to parcel 117, is now only 33 acres. The tax map shows a 33-acre parcel adjacent to what is indisputably parcel 114.

{¶ 37} Based on our review of the record, we find that, even though the exact location of the proposed facility was uncertain, the director was provided with sufficient information from which to reasonably identify the location of the proposed facility and to reasonably conclude that the applicant had control over the land on which the facility would be constructed. Therefore, we find appellants' argument as to this issue to be unpersuasive.

{¶ 38} Appellants next contend the director could not adequately consider the financial feasibility of the proposed project because of problems in Avon Realty Holding's financial statements.  Appellants also argue that the documents Avon Realty Holding submitted do not demonstrate the existence of sufficient working capital for the project.  We reject these arguments.

{¶ 39} Ohio Adm.Code 3701-12-20(I) requires the director to "consider the short-term and long-term financial feasibility and the cost effectiveness of the project and its financial impact upon the applicant, other providers, health care consumers and the medicaid program established under Chapter 5162. of the Revised Code."  In considering these issues, the director must evaluate:

> (1) The availability of financing for the project, including all pertinent terms of any borrowing, if applicable;
>
> (2) The operating costs specific to the project and the effect of these costs on the operating costs of the facility as a whole based upon review of balance sheets, cash flow statements and available audited financial statements;
>
> (3) The effect of the project on charges and payment rates for the facility as a whole and specific to the project;
>
> (4) The costs and charges associated with the project compared to the costs and charges associated with similar services furnished or proposed to be furnished by other providers; and
>
> (5) The historical performance of the applicant and related or affiliated parties in providing cost-effective long-term care services.

Ohio Adm.Code 3701-12-20(I).

{¶ 40} Avon Realty Holding's CON application indicated the project cost was determined to be $17,921,250.  Documentation submitted also indicated that Avon Realty Holding would finance the project with a loan in the amount of $15,571,250 and a cash contribution by the owner in the amount of $2,350,000.  Avon Realty Holding also provided a projected balance sheet and cash flow statement for the three years following project completion.  At the hearing before the hearing examiner, Avon Realty Holding's CPA, Russell Corwin, acknowledged there are discrepancies on the balance sheet and cash

flow statement. However, he asserted that these must have been transcription errors. Further, ODH's initial reviewer of Avon Realty Holding's CON application, Taylor Gustavson, testified that, while there were discrepancies, "based on the information in this application as a whole the financial feasibility of the project doesn't seem to be a question to me." (Tr. Vol. II at 327.) Concerning the working capital issue, Francus explained how the short-term obligations of the project would be met, including through the use of noncash contributions from associated businesses, the minimization of initial expenses, and the deferral of expense payments. Corwin also noted that the financial statements submitted with the CON application indicated significant projected revenue that would be received from residents. In sum, appellants have failed to demonstrate that Avon Realty Holding submitted insufficient information to enable ODH to analyze whether there was adequate financing for the proposed project, or that the submitted information did not reasonably show the financial feasibility of that project.

{¶ 41} Lastly, appellants argue that Avon Realty Holding's failure to provide certain zip code information precluded the director from making the necessary considerations in reviewing the CON application. In support, appellants cite Ohio Adm.Code 3701-12-20(D), which requires the director to "consider the need that the population served or proposed to be served has for the services to be provided upon implementation of the project." This includes examining the "[c]urrent and projected patient origin data, by zip code." Ohio Adm.Code 3701-12-20(D)(3).

{¶ 42} Avon Realty Holding's CON application contained zip code data regarding the projected service area for the proposed facility and the service area for the source facility. However, in providing this data, Avon Realty Holding duplicated three of the zip codes in the projected service areas for the proposed facility. That is, three zip codes are listed as both projected primary and secondary service areas for the proposed facility. Gustavson testified that, in reviewing Avon Realty Holding's application, he noted the duplication of certain zip codes in the listed primary and secondary service areas. However, he did not view this duplication as an impediment to ODH's review of the current and projected patient origin data because he realized it was a mistake and determined that further information was unnecessary on this issue. Because appellants fail to show ODH was unable to examine current and projected patient origin data by zip code pursuant to

Ohio Adm.Code 3701-12-20(D)(3), we reject appellants' argument regarding the zip code information.

{¶ 43} Accordingly, appellants' fourth assignment of error lacks merit, and is overruled.

**B.  Appellants' Second and Third Assignments of Error – Constitutional Challenge**

{¶ 44} Appellants' second and third assignments of error challenge the constitutionality of section 737.10 of Am.Sub.H.B. No. 483.  Their second assignment of error asserts the director erred in granting Avon Realty Holding's January 10, 2017 CON application because section 737.10 of Am.Sub.H.B. No. 483 violates the one-subject rule under Article II, Section 15(D) of the Ohio Constitution.  They contend the inclusion of section 737.10 in Am.Sub.H.B. No. 483 is an example of impermissible "log-rolling."  And their third assignment of error asserts the director erred in granting Avon Realty Holding's January 10, 2017 CON application because section 737.10 of Am.Sub.H.B. No. 483 violates the Uniformity Clause in Article II, Section 26 of the Ohio Constitution.  Appellants argue section 737.10 was impermissibly tailored to benefit only one particular nursing home provider.  We are unpersuaded.

{¶ 45} Legislative enactments are entitled to a strong presumption of constitutionality.  *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 25; *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, ¶ 25.  A party only rebuts that presumption by establishing beyond a reasonable doubt that the enactment is unconstitutional.  *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, ¶ 12; *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 11.  Thus, any doubt as to the constitutionality of an enactment will be resolved in favor of its validity.  *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, ¶ 5.  The constitutionality of an enactment is a question of law, which appellate courts review de novo.  *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, ¶ 16; *Fowler v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 16AP-867, 2017-Ohio-7038, ¶ 7.

{¶ 46} The one-subject rule of the Ohio Constitution provides that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title."  Article II, Section 15(D) of the Ohio Constitution.  The purpose of this provision is to prevent "log-rolling," "the practice by which several matters are consolidated in a single bill for the

purpose of obtaining passage for proposals which would never achieve a majority if voted on separately." *Hoover v. Bd. of Cty. Commrs.*, 19 Ohio St.3d 1, 6 (1985).

{¶ 47} The one-subject rule is mandatory and may result in the invalidation of legislation. *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, ¶ 54. Where a court determines that legislation contains more than one subject, it may determine which subject is primary and which is an unrelated addition. The court may then sever the unrelated provisions and preserve the portions of the bill relating to a single subject. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 500 (1999); *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 149 (1991). Because there is a strong presumption supporting the constitutionality of a legislative enactment, however, only "a manifestly gross and fraudulent violation" of the one-subject rule will cause this court to invalidate a legislative enactment. *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142, 145 (1984).

{¶ 48} Ohio courts must accord "the General Assembly 'great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject.' " *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, ¶ 27, quoting *Dix* at 145. Given the wide latitude owed to the General Assembly, courts liberally construe the term "subject" for purposes of the rule. *Ohio Civ. Serv. Emps. Assn.* at ¶ 27. Thus, "[t]he mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics." *Id.* at ¶ 28; *accord Dix* at 146 (holding that "the one-subject provision is not directed at plurality but at disunity in subject matter"). There is no violation of the one-subject rule if there exists any "practical, rational or legitimate reason for combining provisions in one Act." *Ohio Civ. Serv. Emps. Assn.* at ¶ 28.

{¶ 49} Appellants argue that section 737.10 of Am.Sub.H.B. No. 483 has no discernable rational relationship to the rest of the legislation. We disagree.

{¶ 50} Am.Sub.H.B. No. 483 contains multiple provisions concerning residential care facilities. For example, this legislation directs the Ohio Department of Developmental Disabilities ("DODD") to prepare a report evaluating the progress of efforts to relocate the

residents of closing developmental centers (section 751.20), and it permits intermediate care facilities for individuals with intellectual disabilities ("ICF/IID"), in addition to nursing home and residential care facilities, to use one or more medical aides to administer prescription medications to its residents, subject to certain conditions (section 101.01 amending R.C. 4723.64). Further, this legislation contains other provisions directly affecting ODH. For example, it decreased funding for ODH by approximately $11 million (section 289.10); transferred the "part C early intervention services program" from ODH to the DODD (section 101.01 amending R.C. 3701.61 and R.C. 5123.02, and section 751.10); and amended a statute requiring the director to adopt administrative rules defining and classifying hospitals and dispensaries and providing for the reporting of information by hospitals and dispensaries (section 101.01 amending R.C. 3701.07). Thus, multiple provisions in Am.Sub.H.B. No. 483 address residential care facility issues, and multiple provisions in the legislation alter the authority of ODH as to particular healthcare issues. The challenged provision, section 737.10, aligns with a common purpose of Am.Sub.H.B. No. 483—to make legislative changes concerning facilities that provide institutional care.

{¶ 51} Because appellants cannot show beyond a reasonable doubt that the General Assembly's inclusion of section 737.10 in Am.Sub.H.B. No. 483 violated the single-subject rule, we overrule their second assignment of error.

{¶ 52} We also reject appellants' claim that section 737.10 violates the Uniformity Clause of the Ohio Constitution, which provides that "[a]ll laws, of a general nature, shall have a uniform operation throughout the state." Article II, Section 26 of the Ohio Constitution. The purpose of the Uniformity Clause is "to prohibit the enactment of *special* or *local* legislation." (Emphasis sic.) *Austintown Twp. Bd. of Trustees v. Tracy*, 76 Ohio St.3d 353, 356 (1996).

{¶ 53} Courts apply a two-part test in determining whether legislation violates the Uniformity Clause. First, the court must determine whether the statute is a law of a general or a special nature. *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 541 (1999). This part of the Uniformity Clause test concerns the subject matter of the legislative enactment, not its geographical application. *Id.* at 542. "A law is general if the subject does or may exist in, and affect the people of, every county in the state." *Cuyahoga Cty. Veterans Servs. Comm.*

*v. State*, 159 Ohio App.3d 276, 2004-Ohio-6124, ¶ 17 (10th Dist.), citing *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 12 (1999).

{¶ 54} Second, the court must determine whether the statute operates uniformly throughout the state. *Desenco, Inc.* at 541. This means " 'universal operation as to territory; it takes in the whole state. And, as to persons and things, it means universal operation as to all persons and things in the same condition or category. When a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state.' " *Austintown Twp. Bd. of Trustees* at 356, quoting *State ex rel. Wirsch v. Spellmire*, 67 Ohio St. 77, 86 (1902). A law does not operate uniformly throughout the state when "it seeks to create artificial distinctions where no real distinction exists" and is narrowly tailored in its application. *State ex rel. Stanton v. Powell*, 109 Ohio St. 383, 385 (1924); *Cuyahoga Cty. Veterans Servs. Comm.* at ¶ 21. A law is " 'equally valid if it contains provisions which permit it to operate upon every locality where certain specified conditions prevail.' " *Descenco* at 542, quoting *Stanton* at 385.

{¶ 55} Section 737.10 pertains to the relocation of long-term care beds. A law pertaining to this subject matter is considered a law of a general nature as it affects the people of every county in the state. *Gallipolis Care, L.L.C. v. Ohio Dept. of Health (In re Holzer Consol. Health Sys.)*, 10th Dist. No. 03AP-1020, 2004-Ohio-5533, ¶ 24. Thus, the law meets the first part of the Uniformity Clause test.

{¶ 56} Section 737.10 also satisfies the second part of the Uniformity Clause test. Appellants argue this case is indistinguishable from *Holzer* wherein this court found a legislative enactment, section 26 of Am.Sub.S.B. No. 261, to violate the Uniformity Clause. We disagree. In *Holzer*, the legislation at issue provided that "[n]otwithstanding section 3702.68 of the Revised Code [which provided for a statewide moratorium on relocating nursing home beds across county lines], the Director of Health may accept for review under section 3702.52 of the Revised Code an application for a certificate of need approving the relocation of up to twenty-four existing nursing home beds in Jackson County to Gallia County." Section 26 of Am.Sub.S.B. No. 261. This court resolved that " 'an application' in [section 26 of Am.Sub.S.B. No. 261] is synonymous with one application, the specific application made by Holzer seeking to relocate home beds from Jackson to Gallia County."

*Holzer* at ¶ 27. Thus, this court found that the statute at issue "did not operate in a uniform manner throughout the state because it did not have the potential to apply to any county in the state or any other nursing home operators other than the nursing home that was applying for the relocation of beds." *Cuyahoga Cty. Veterans Servs. Comm.* at ¶ 20, citing *Holzer.*

{¶ 57} The law at issue here is not the type of "narrowly tailored" and geographically limited legislation that was invalidated in *Holzer.* By its terms, section 737.10 applies to any county home or county nursing home that had certified beds under R.C. 5155.38 and had operated on or before October 1, 2015. While section 737.10 refers to the director accepting "*a* certificate of need application" (emphasis added) that meets all delineated requirements, this does not reflect an intent for the section only to apply to one particular circumstance as was found in *Holzer.* According to appellants, no county home or county nursing home in Ohio other than Golden Acres could have satisfied section 737.10's requirements. They make this assertion based on the testimony of Glass, an in-house attorney for ODH, who testified that he was not aware of any other county home that had closed after May 2016. But Glass's testimony did not establish that no other county home or county nursing home in Ohio could have satisfied section 737.10's requirements. His statement did not address the existence of county homes or county nursing homes in Ohio that closed before May 2016 and had certified beds under R.C. 5155.38. Thus, Glass's testimony did not demonstrate that Golden Acres was the only former county home or county nursing home from which an applicant could have sought to relocate long-term care beds during the specified application period. And the language of section 737.10 is not limited to permitting the relocation of beds within Lorain County.

{¶ 58} For these reasons, we reject appellants' argument that section 737.10 of Am.Sub.H.B. No. 483 violates the Uniformity Clause of the Ohio Constitution. Accordingly, we overrule appellants' third assignment of error.

### C. Avon Realty Holding's Cross-Assignments of Error

{¶ 59} In Avon Realty Holding's first cross-assignment of error, it argues the hearing examiner's findings of fact and conclusions of law, which were adopted by the director, fail to recognize that Golden Acres was open and operating when it filed its January 10, 2017 CON application. Avon Realty Holding reasons that because Golden Acres was open and

operating at that time it met the requirements of Ohio Adm.Code 3701-12-23.2(E) and R.C. 3702.51(J) to demonstrate it was an "existing long-term care facility" at the time of the application.

{¶ 60} According to Avon Realty Holding, the enactment of Am.Sub.H.B. No. 483 was inconsequential to its January 10, 2017 CON application meeting the applicable requirements. In support of this contention, Avon Realty Holding cites a Lorain County prosecutor's testimony that Golden Acres "reopened on June 14, 2016." (Tr. Vol. IV at 434.) However, even though there was testimony that Golden Acres "reopened on June 14th, 2016," the prosecutor also testified that Golden Acres did not provide nursing home services to anyone after October 30, 2015. It is uncontroverted that Golden Acres was not actively providing long-term care services at the time of Avon Realty Holding's CON application and had not provided long-term care services for at least three hundred sixty-five consecutive days within the twenty-four months immediately preceding Avon Realty's filing of the CON application on January 10, 2017. Thus, at that time, Golden Acres was not an "existing long-term care facility."

{¶ 61} Accordingly, we overrule Avon Realty Holding's first cross-assignment of error.

{¶ 62} Avon Realty Holding's second cross-assignment of error alleges the ODH hearing examiner erroneously granted appellants' motion to quash its subpoena request for appellants' financial documents. Avon Realty Holding asserts that obtaining this information was essential for it to refute appellants' contention that the proposed project will adversely financially impact them. Avon Realty Holding further asserts that, if this court modifies or remands this matter to the director, appellants should be ordered to comply with Avon Realty Holding's subpoenas regarding appellants' financial documents. This cross-assignment of error is moot because we have determined the director did not err in granting Avon Realty Holding's January 10, 2017 CON application and therefore will affirm the director's adjudication order.

{¶ 63} Avon Realty Holding's third cross-assignment of error alleges the ODH hearing examiner improperly used the term "special legislation" in reference to Am.Sub.H.B. No. 483. Avon Realty Holding contends that the hearing examiner's use of

this term implied that it was enacted solely to enable the relocation of long-term care beds from Golden Acres to the proposed Avon Skilled Nursing and Rehabilitation facility.

{¶ 64} In granting Avon Realty Holding's January 10, 2017 CON application, the director adopted the hearing examiner's findings of fact, conclusions of law, and recommendation that the director grant Avon Realty Holding's CON application. The hearing examiner's findings of fact, conclusions of law, and recommendation contain no reference to Am.Sub.H.B. No. 483 constituting "special legislation." Furthermore, we reject Avon Realty Holding's assertion that the hearing examiner's use of the term "special legislation" reflected a finding as to the legislation's constitutionality. The hearing examiner correctly, expressly, and repeatedly, noted it was not within the executive branch's authority to consider and rule on the constitutionality of the legislation. And even if the hearing examiner had expressed a position as to the legislation's constitutionality, we would give it no deference in our review of that issue. Because the hearing examiner's use of the term "special legislation" is inconsequential, we overrule Avon Realty Holding's third cross-assignment of error.

## IV. Disposition

{¶ 65} Appellants' four assignments of error are overruled. Cross-appellant's first and third assignments of error are overruled, and its second assignment of error is moot. We affirm the adjudication order of the Director of the Ohio Department of Health.

*Order affirmed.*

BROWN and BRUNNER, JJ., concur.